*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHARLES E. BURNETT, | ) | |
| | ) | Supreme Court No. S-15715 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-12-02365 CI |
| v. | ) | |
| | ) | O P I N I O N |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | No. 7149 – January 27, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant. Michael J. Hanson, Call & Hanson, P.C., and Barry J. Kell, Kell & Associates, P.C., Anchorage for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

WINFREE, Justice.
MAASSEN, Justice, with whom FABE, Justice, joins, dissenting.

## I. INTRODUCTION

A driver lost control of his truck and crashed into a cabin, causing property damage — including a heating fuel spill — and personal injuries to the cabin owner. The cabin owner brought suit against both the driver and the driver's insurance company,

alleging in part that the insurance company subsequently took charge of and negligently handled the fuel spill cleanup on the cabin owner's property. The superior court granted the insurer summary judgment, concluding as a matter of law that the insurer could not owe the cabin owner an actionable duty. The cabin owner appeals, arguing that our case law does not preclude a duty in this context. We agree with the cabin owner and therefore reverse the superior court's grant of summary judgment.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

In November 2011 a driver lost control of his truck and crashed into Charles Burnett's cabin in North Pole.[1] An attached heating oil tank was damaged and fuel spilled onto and under the cabin. Burnett suffered bodily injuries, including lung problems from breathing fuel fumes.

Government Employees Insurance Company (GEICO), the driver's insurer, hired a contractor to perform an environmental site assessment under Alaska Department of Environmental Conservation (DEC) standards "and to coordinate the necessary cleanup of the spill." The contractor prepared a cleanup plan, but DEC initially did not approve it. Burnett then asked GEICO representative Katie Johns for money to allow him to arrange the cleanup, but Johns told him GEICO would handle the spill cleanup. Burnett made this request at least one more time, but GEICO again denied it. Johns told Burnett that she had to protect her insured from potential liability to the State of Alaska and that Burnett should not attempt to clean up the fuel spill because GEICO would do so. No cleanup work was done in 2012. Over time the fuel migrated under Burnett's cabin, making it uninhabitable and complicating Burnett's respiratory health issues.

---

[1]     We view the facts in Burnett's favor because he is the non-moving party. *Maness v. Daily*, 307 P.3d 894, 900 (Alaska 2013).

GEICO's contractor cleaned up the fuel spill sometime in October 2013, nearly two years after the accident.

### B. Proceedings

While the fuel cleanup was pending Burnett sued both the driver and GEICO. Burnett alleged that GEICO had prevented him from cleaning up the fuel, had stated it would take care of the cleanup, and then had not done so in a timely manner. After the fuel cleanup was complete, GEICO made a payment to Burnett under the driver's policy in exchange for Burnett dismissing his claim against the driver; Burnett's claim against GEICO remained open. GEICO then moved for summary judgment on Burnett's claim against it — relying on *O.K. Lumber Co. v. Providence Washington Insurance Co.* to argue "that a liability insurer owes no duty of good faith and fair dealing to a third-party claimant"[2] — contending that as a matter of law it owed Burnett no duty to act reasonably in handling the property cleanup.

The superior court granted GEICO summary judgment because — based on *O.K. Lumber* — "as . . . [the driver's] liability insurer, GEICO owe[d] no actionable duty to Burnett" and "[i]n the absence of a duty, GEICO can have no liability to Burnett." Burnett appeals, arguing that *O.K. Lumber* does not preclude a duty by GEICO in this context and that genuine issues of material fact exist regarding whether GEICO undertook a duty to handle the property cleanup reasonably.

## III. STANDARD OF REVIEW

"We review rulings on motions for summary judgment de novo, 'reading the record in the light most favorable to the non-moving party and making all reasonable

---

[2]    759 P.2d 523, 525-26 (Alaska 1988).

inferences in its favor.' "[3]  The existence of a duty is a question of law which we review de novo.[4]

## IV.    DISCUSSION

### A.    *O.K. Lumber* And The Parties' Arguments

In *O.K. Lumber* a third party claimant sued a liability insurer for failing to promptly settle two claims against its insureds.[5]  The third party claimant argued that it could sue the insurer for breaching the contractually based fiduciary duty between the insurer and its insureds "either because it is a third party beneficiary of the [duty] or because public policy so dictates."[6]  We held that neither theory supported allowing the third party claimant to bring a cause of action against the liability insurer and expressed concern with placing the insurer in "a fiduciary relationship both with the insured and a claimant because the interests of the two are often conflicting."[7]

GEICO argues that *O.K. Lumber* holds "broadly and without limitation" that a third party claimant may not bring any claim against an insurer "for allegedly wrongful claims handling practices."  GEICO would have us interpret *O.K. Lumber* to hold that there never can be a legal duty between an insurer and a third party claimant for any action taken in the insurer's claims settlement role.  But the issue in *O.K. Lumber*

---

[3]    *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014) (quoting *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003)).

[4]    *State v. Sandsness*, 72 P.3d 299, 301 (Alaska 2003) (citing *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 109 (Alaska 1992)).

[5]    759 P.2d at 524-25.

[6]    *Id.* at 525.

[7]    *Id.* at 524, 526.

was "whether the insurer's duty of good faith and fair dealing [arising from the insurance contract] benefits anyone other than the named insured," and the claimant there did not bring its claim based on a tort independent of that contractual relationship.[8] We did not decide whether the insurer's claims handling practices were actionable under independent tort theories. Burnett therefore argues that even though GEICO did not owe him the same contractual duty it owed its insured, GEICO could — and did — voluntarily undertake a separate legal duty to Burnett that was not inconsistent with its duty to its insured.

### B. An Insurer's Potential Tort Duty To A Third Party Claimant

Because *O.K. Lumber* did not resolve this issue, we face the question whether an insurer's duty to its insured prevents it from having — or taking on — any tort duty to a third party claimant during the claims handling process. GEICO contends that it cannot owe Burnett *any* duty because "a liability insurer cannot owe simultaneous duties of good faith and fair dealing to both its insured and a third-party claimant." GEICO urges that any damages Burnett incurred as a result of GEICO's actions must be attributable to its insured, and therefore any cognizable claim Burnett has must be against its insured, not GEICO. Burnett argues that GEICO undertook an independent duty to Burnett to reasonably perform the cleanup — a duty that did not conflict with GEICO's duty to its insured because proper cleanup "would have benefitted both . . . Burnett and [its insured]" — and Burnett's claim is therefore actionable against GEICO.

As a general matter we see no reason an insurer's contractual duties to an insured necessarily should negate completely different common law tort duties it may have to a third party claimant. It would be odd to provide common law immunity for an insurer's tortious acts against a third party claimant simply because they occurred during

---

[8]     *Id.* at 525.

the claims handling process.[9] But we also see no reason an insurer should be protected from the consequences of affirmatively undertaking a new and independent duty to a third party claimant as a part of its claims handling process — and then wrongfully repudiating or improperly performing that independent duty — or be allowed to foist onto its insured the entire legal responsibility for its actions when the liability does not stem from the insured's acts.[10]

We are not alone in adopting this latter view. *Howton v. State Farm Mutual Automobile Insurance Co.* involved an insurer's express agreement with third party claimants to pay for the repair of the claimants' vehicle at the insurer's expense without prejudice to the claimants' right to claim personal injury damages.[11] After the claimants had the car repaired the insurer refused to pay the full amount and conditioned partial payment on the claimants releasing all accident-related claims.[12] The Alabama Supreme Court acknowledged a general rule that a third party to a liability insurance contract cannot bring a direct action against an insurer, but clarified that no Alabama case supporting that rule involved an insurer "independent of its insured and its obligation to

---

[9]     *See, e.g.*, *Stafford v. Westchester Fire Ins. Co. of N.Y.*, 526 P.2d 37, 43 (Alaska 1974) (holding that "intentional torts committed [by workers' compensation insurers] in connection with the investigation of claims . . . are not to be protected" by exclusive remedy statutes), *overruled on other grounds by Cooper v. Argonaut Ins. Cos.*, 556 P.2d 525 (Alaska 1976).

[10]     "[A] claimant may become entitled to bring a direct action where the insurer has taken on a new and independent obligation to the victim . . . ." 7A COUCH ON INSURANCE § 104:6, at 104-22 (3d ed. 2013). We express no opinion whether or under what circumstances an insured might share liability for its insurer's conduct in this context.

[11]     507 So. 2d 448, 448 (Ala. 1987) (per curiam).

[12]     *Id.*

pay its insured's liability, alleged to have contracted directly with the third party or to have committed a tort directly against the third party."[13] To apply the general rule under the case's circumstances would "permit the insurer to commit otherwise actionable wrongs with impunity."[14] The court held that the general rule prohibiting direct action against an insurer did not apply if the insurer undertakes a new and independent obligation to the injured third party in efforts to settle the third party's claim.[15]

This compelling reasoning supports our decision today: A liability insurer can owe a tort duty to a third party claimant when the insurer's claims handling actions affirmatively create a new and independent duty to the claimant.

### C.     Summary Judgment Analysis In This Case

To survive GEICO's summary judgment motion — based on lack of duty — Burnett must raise a genuine factual dispute whether GEICO affirmatively undertook an independent duty to clean up Burnett's property.[16] Before considering Burnett's argument, it is useful to consider GEICO's contractual duties to its insured and its

---

[13]     *Id.* at 450.

[14]     *Id.*

[15]     *Id.* at 450-51.

[16]     The existence of a duty is a question of law, but we must examine a case's factual context to determine whether a duty exists. *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013) ("When determining the existence of a duty of care, summary judgment is appropriate where 'the only reasonable inference from the undisputed facts is that one party owed another no duty whatsoever — or owed a duty clearly and vastly narrower in scope than the one that the other party asserts.' " (quoting *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998))); *see also, e.g.*, *Williams v. Municipality of Anchorage*, 633 P.2d 248, 251-52 (Alaska 1981) (reversing grant of summary judgment because there was a genuine issue of fact concerning whether a duty was undertaken when municipal employee supplied ladder, installed it, and instructed injured party on its use).

practical choices with respect to the fuel oil spill. Under the relevant policy GEICO had agreed to "pay damages which an insured becomes obligated to pay" due to property damage. GEICO also had agreed to defend "any suit for damages payable under the terms of the policy" and had reserved the right to "settle any claim or suit." The property damage policy limit was $50,000.

An insurer's duty to its insured generally is determined by the policy language.[17] But the insurance contract also creates an implied duty of good faith and fair dealing, which we have characterized as a requirement "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."[18] The duty of good faith and fair dealing may require an insurer to attempt to settle a claim if there is a great risk of recovery beyond the policy limit.[19] GEICO rightfully relies heavily on its good faith and fair dealing duty to its insured to explain its actions in this case.

GEICO recognized that its insured had liability exposure to both Burnett and the State of Alaska for the fuel oil spill, with only a $50,000 policy limit. GEICO had the option of sitting back and letting Burnett and DEC handle the cleanup, defending property damage and environmental claims brought against its insured by Burnett and DEC, settling those claims or paying judgments — up to its policy limit — that might be entered against its insured, and taking the risk that its insured might be exposed to liability in excess of the policy limit. GEICO also had the option of affirmatively taking

---

[17] *Williams v. GEICO Cas. Co.*, 301 P.3d 1220, 1225 (Alaska 2013) (citing *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000)).

[18] *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004) (quoting *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979)).

[19] *Id.* (quoting *Crisci v. Sec. Ins. Co.*, 426 P.2d 173, 176 (Cal. 1967)).

control of all or parts of the cleanup to ensure that it was performed in the most economical manner protecting its insured from liability in excess of the policy limit. It is clear that GEICO chose this latter option, and we do not fault GEICO for doing so. But that option necessarily exposed GEICO to all of the liability risk associated with managing an environmental cleanup project. And to follow through with that option GEICO necessarily had to reach some kind of agreement with Burnett to do the work — GEICO surely had no right to boldly trespass on Burnett's property to perform cleanup work simply because it had a separate duty of good faith and fair dealing to its insured. At the summary judgment stage details of the putative cleanup agreement between GEICO and Burnett and the duties arising from that agreement — if it existed — were relevant, not GEICO's duties to its insured.

Burnett argues that when GEICO directed him not to clean up the fuel spill on his property, stated that it would enter onto his property and do so, and ultimately did enter onto his property to do so through its contractor, GEICO undertook a duty to complete the cleanup in a reasonable and timely fashion and to act in a manner that would not exacerbate the original harm caused by GEICO's insured. Implicit in this argument is that Burnett acquiesced to GEICO's offer to do the cleanup and to GEICO's contractor's entry on his property to perform the cleanup. The dissent fails to recognize that it is this alleged independent and separate agreement between GEICO and Burnett — not some kind of failure or wrongful conduct during GEICO's normal adjusting activities — that is the foundation for Burnett's potentially viable claim. The Restatement (Second) of Torts § 323 indicates that a duty arises when a person undertakes to render property protection services to another:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting

from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.[20]

Alaska has long embraced this principle,[21] and we will not be alone in applying § 323 to conclude that an insurer has undertaken a duty to a third party claimant.[22]

Viewed in the light most favorable to Burnett, there is a genuine dispute whether GEICO affirmatively undertook an independent duty to Burnett through its interactions with him.[23] Burnett alleged that "GEICO told [him] specifically not to touch the spill, that they would take care of it." The record supports this allegation: Johns communicated to Burnett on at least two occasions that Burnett should take no action to clean up the spill and that GEICO would do so. Johns also told Burnett that GEICO

---

[20] RESTATEMENT (SECOND) OF TORTS § 323 (AM. LAW INST. 1965).

[21] *See, e.g.*, *Adams v. State*, 555 P.2d 235, 240 (Alaska 1976) (" 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully . . . [.]' The concept of voluntary assumption of a duty has long been recognized in Alaska . . . ." (quoting *Glanzer v. Shepard*, 135 N.E. 275, 276 (N.Y. 1922) (footnote omitted)).

[22] *See, e.g.*, *Nelson v. Union Wire Rope Corp.*, 199 N.E.2d 769, 779 (Ill. 1964) (finding duty under functionally identical Restatement (First) of Torts § 323(1) when workers' compensation insurer negligently inspected workplace). AS 23.30.263 prevents a similar cause of action in Alaska by providing workers' compensation insurers immunity from negligent-inspection suits.

[23] *See Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014) ("[T]he only questions to be answered at the summary judgment stage are whether a reasonable person could believe the non-moving party's assertions and whether a reasonable person could conclude those assertions create a genuine dispute as to a material fact.").

needed to protect its insured from potential liability to the State of Alaska, and shortly after the spill GEICO hired a qualified contractor to do a site assessment; from these facts it can reasonably be inferred that GEICO knew prompt action was required to prevent further contamination. Burnett attested that he "expected that GEICO would clean up the property posthaste" because GEICO "refused to allow [him] to touch the spill to remediate it," and that as "time passed, the contamination migrated out across the property." Burnett's assertions that GEICO would remedy the spill and that the fuel spread as a result of its inaction also appear to create genuine issues regarding whether Burnett relied on GEICO's undertaking to his detriment and whether GEICO's inaction increased the harm to the property.

Summary judgment establishing as a matter of law that GEICO did not owe Burnett a duty of care was not appropriate in this case.[24] On the present record, GEICO may owe Burnett an independent duty under § 323, and he should have an opportunity to try to establish that independent duty at an evidentiary hearing or trial.[25]

---

[24] *Cf. Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013) ("When determining the existence of a duty of care, summary judgment is appropriate where 'the only reasonable inference from the undisputed facts is that one party owed another no duty whatsoever — or owed a duty clearly and vastly narrower in scope than the one that the other party asserts.' " (quoting *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998))).

[25] We note that the dissent misapprehends the posture of this case and misapplies summary judgment rules. The superior court granted summary judgment in favor of GEICO on the theory that GEICO could owe Burnett no duty whatsoever as a third party liability insurer. The dissent agrees that an insurer may undertake an independent duty to a third party claimant while adjusting a claim; thus it appears the entire court agrees that the superior court's ruling was overbroad, because GEICO could have accepted a new and independent duty to Burnett during the adjustment process. The question then becomes whether GEICO did so. For purposes of defeating GEICO's summary judgment motion, all Burnett had to show was some admissible evidence

(continued...)

## V.    CONCLUSION

We REVERSE the superior court's grant of summary judgment to GEICO and REMAND for further proceedings consistent with this opinion.

---

[25]    (...continued)
leading a reasonable person to conclude there was a dispute on that point. *Christensen*, 335 P.3d at 520. The dissent's contention that "there is nothing in this case on which to find that such a duty was ever assumed" improperly views the facts in the light most favorable to GEICO rather than to Burnett. *Cf. id.* And contrary to the dissent's position that we should simply decide the entire case on the present record, Burnett is not required to prove his case at the summary judgment stage. *Id.* Having demonstrated a factual dispute underlying the duty question that was sufficient to defeat summary judgment, Burnett will be required to prove his case at trial.

MAASSEN, Justice, with whom FABE, Justice, joins, dissenting.

I dissent. While I agree with the court's observation that a liability insurer can assume a "new and independent" duty to a third party claimant while adjusting a claim, as we recognized in *O.K. Lumber v. Providence Washington Insurance Co.*,[1] there is nothing in this case on which to find that such a duty was ever assumed. The plaintiff's allegations, taken as true, simply show an insurer acting — reasonably or otherwise — in the course of its contractual duty to minimize its insured's exposure to liability. Allowing the possibility of a "new and independent" duty on these facts expands the law in a direction it does not need to go, and it is likely to unnecessarily complicate insurer-defended cases in the future.

As is evident from the court's factual summary, all the actions GEICO allegedly took that delayed the cleanup and exacerbated Charles Burnett's harm occurred between November 2011, when the accident occurred, and 2014, when Burnett released the insured driver "[a]fter the fuel cleanup was complete."[2] During that entire time — from notice of the claim through settlement and release — GEICO indisputably had a fiduciary duty, based on contract, to act in the best interests of its insured by investigating Burnett's claim and then either settling or defending against it.[3] GEICO had no coexistent duty to Burnett in either contract or tort that compelled it to address

---

[1]     "[T]he third party claimant has a cause of action against an insurer that perpetrates an independent tort against it."  759 P.2d 523, 525 (Alaska 1988) (citing *Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 287-88 (Alaska 1980)); *see* Op. at 6.

[2]     Op. at 2-3.

[3]     *O.K. Lumber*, 759 P.2d at 525 ("The fiduciary relationship inherent in every insurance contract gives rise to an implied covenant of good faith and fair dealing. Thus, an insurer has an obligation to investigate claims . . . ." (citations omitted)).

his damages. When it allegedly assumed responsibility for the cleanup and directed Burnett to stand aside, GEICO was acting in the pursuance of its duty to its insured.

The court today finds genuine issue of material fact about whether a new and different duty arose in GEICO's alleged assurances to Burnett that it would clean up the spill, Burnett's alleged reliance on those assurances, and an alleged increase in harm to the property due to "[GEICO's] inaction."[4] "But the question of duty is a matter of law."[5] We can — and as a reviewing court we should — assume that Burnett's factual allegations are true and decide whether the circumstances as alleged created an "independent duty to act."

I do not believe they did. This is not a case in which the insurer seeks "to foist onto its insured the entire legal responsibility for its actions when the liability does not stem from the insured's acts," as the court today describes the wrong it seeks to avoid.[6] The general rule in Alaska is and long has been that "a plaintiff may not sue a tortfeasor's insurance company directly."[7] This usually means that the claimant cannot recover directly from the insurer damages that the law allows him to recover from the insured tortfeasor. If GEICO did drag its feet and unreasonably allow Burnett's damage to accumulate, Burnett's claim for the increased harm is still against the original

---

[4]    Op. at 10-11.

[5]    *Hurn v. Greenway*, 293 P.3d 480, 487 (Alaska 2013); *see also Whitney v. State Farm Mut. Auto. Ins. Co.*, 258 P.3d 113, 116 (Alaska 2011) ("If there are no genuine disputes of material fact, the existence and scope of a legal duty are questions of law which we review de novo.").

[6]    Op. at 6.

[7]    *Hamilton v. Blackman*, 915 P.2d 1210, 1216 (Alaska 1996) (first citing *Evron v. Gilo*, 777 P.2d 182, 187-88 (Alaska 1989); then citing *Severson v. Estate of Severson*, 627 P.2d 649, 651 (Alaska 1981); and then citing WILLIAM L. PROSSER & W. PAGE KEETON, THE LAW OF TORTS § 82, at 586 (5th ed. 1984)).

tortfeasor, GEICO's insured.[8]  It is *the insured* who caused Burnett's harm, even as the harm increases after the accident; GEICO's duty to step in and address it is owed to its insured.  To the extent GEICO's conduct exposes its insured to liability above the limits of his insurance coverage, the insured is still liable to Burnett for all the damages proximately caused by the accident; the excess is an issue between the insured and GEICO, which may be liable to the insured for the excess if its delay in the cleanup was indeed unreasonable.[9]

What does it mean if the law is otherwise?  If GEICO is liable to Burnett for its failures during cleanup based on breaches of an "independent duty to act," does that mean that the insured tortfeasor is *not* liable for the same harm?  Or are they jointly liable?  And does this mean that if Burnett had sued only GEICO's insured, the insured would be well advised to file a third party claim himself against GEICO as a potential joint tortfeasor to whom liability must be apportioned?  A prudent defense lawyer might well think so.  Needless to say, today's decision complicates the relationship between insurer and insured by giving the insured defendant — usually represented by insurer-appointed counsel — a strong incentive to join the insurer as a co-defendant, alleging that it failed in some way to timely address the claimant's harm while the claimant was justifiably relying on the insurer to do so.

---

[8]  Indeed, the damages alleged in Burnett's complaint are all attributable to the original spill and the fact that they continued to accumulate.  Burnett's complaint against GEICO is not that it caused him a new and different harm, only that it allowed the harm caused by its insured to continue longer than it reasonably should have.

[9]  *See Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004) ("Breach of the covenant of good faith and fair dealing exposes the insurer to a claim of bad faith and may expose it to liability for any excess judgment against its insured.").

My primary concern with today's decision is the lack of a limiting principle. In the course of their duties to their insureds, liability insurers regularly assume responsibility for scheduling, paying for, or directing some kind of damage-control measures. Say an auto insurer promises the claimant that the tortfeasor's medical payments coverage will pay for the claimant's necessary medical care. The insurer asserts that certain palliative care is unnecessary and refuses to pay for it; the claimant alleges that this decision caused his pain to continue longer than it otherwise would have. Does the claimant now have a direct tort action against the insurer under Restatement § 343 in addition to his claim against the insured?

Such may well be the result under *Howton v. State Farm Mutual Automobile Insurance Co.*,[10] the case on which the opinion primarily relies.[11] But I find *Howton*'s dissent more convincing; three justices considered the existing law — which already allowed the claimant to sue the tortfeasor's insurer for harms "for which the insured is not liable" — to be sufficient for the claimant's protection.[12] And the Oklahoma Supreme Court rejected the *Howton* rule in *McWhirter v. Fire Insurance Exchange, Inc.*, clearly skeptical of the new duty's origins:

> We recognize one state court which has determined an insurance carrier is no less liable under the law for breach of its own contract obligations or tortious conduct than any other party where the insurer undertakes a new and independent obligation directly with a nonparty to the insurance contract in its efforts to negotiate a settlement of the party's claim. However, the court did not explain where this *new and independent obligation* arises from. And, *but*

---

[10]    507 So. 2d 448 (Ala. 1987).

[11]    Op. at 6-7.

[12]    *Howton*, 507 So. 2d at 451 (Steagall, J., dissenting).

*for* the insurance contract, there would be no reason for the insurance company to deal with the third party at all. We find the case unpersuasive and decline to apply its holding to our case.[13]

The Florida Court of Appeals felt the same way.[14] The Washington Court of Appeals followed *Howton*, but it did so in the narrow context of an "intentionally tortious act": the insurer's intentional misrepresentations about when settlement funds would be paid.[15] The court affirmed the dismissal of claims for violation of unfair claims settlement practices regulations, breach of the duty of good faith and fair dealing, and breach of contract.[16]

I conclude that, given the potential for conflicting duties that was at the heart of our decision in *O.K. Lumber*,[17] any "new and independent" duty to the claimant should be based on either (1) conduct or commitments by the insurer after the claims against the insured have been resolved (i.e., after the insurer has fully satisfied its fiduciary duty to the insured) or (2) a truly "new and independent" duty, that is, one not simultaneously owed *to the insured by virtue of the insurance contract* (i.e., a duty of reasonable care any actor would owe another — when driving, when holding a ladder, when lighting a match near a gas leak). Neither of these conditions exists when the claimant's damages, proximately caused by the conduct of the tortfeasor, increase due

---

[13]     878 P.2d 1056, 1059 (Okla. 1994) (emphasis in original).

[14]     *Hazen v. Allstate Ins. Co.*, 952 So. 2d 531, 539 (Fla. App. 2007) ("[W]e think the reasoning on this point in *Howton* is unsound.").

[15]     *Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc.*, 99 P.3d 1256, 1261 (Wash. App. 2004).

[16]     *Id.* at 1259-60.

[17]     759 P.2d 523, 525-26 (Alaska 1988).

to insurer inaction while the insurer is acting in the course of its fiduciary duty to its insured. Because the "new and independent" duty the court recognizes today is essentially indistinguishable, either temporally or in substance, from the duty GEICO was pursuing on behalf of its insured, I would affirm the superior court's grant of summary judgment to GEICO.