*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOSHUA M. MARTINEZ and ROBERT MARTINEZ, | ) ) ) |
| Appellants, | ) ) |
| v. | ) ) ) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY and CHARLES E. BURNETT, | ) ) ) ) |
| Appellee. | ) ) ) |
| CHARLES E. BURNETT, | ) ) ) |
| Appellant, | ) ) |
| v. | ) ) ) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | ) ) ) ) |
| Appellee. | ) ) ) |

Supreme Court Nos. S-17041/17132 (Consolidated)

Superior Court No. 4FA-12-02365 CI

O P I N I O N

No. 7479 – September 4, 2020

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Paul W. Waggoner, Anchorage, for Appellants Joshua M. Martinez and Robert Martinez. Kenneth P.

Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant/Appellee Charles E. Burnett. Michael J. Hanson, Call & Hanson, P.C., Anchorage, and Barry J. Kell, Kell & Associates, P.C., Anchorage, for Appellee Government Employees Insurance Company.

Before: Bolger, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carney, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

A man was driving a pickup truck when he lost control and crashed into a cabin, injuring the cabin owner and causing damage, including a spill of heating fuel. The cabin owner asked the driver's insurance company to pay him to do the cleanup himself, but the insurance company refused because the cabin owner did not have the qualifications required by the Alaska Department of Environmental Conservation. Cleanup stalled for over a year while the effects of the spill on the property and the owner's health allegedly worsened.

The insured driver and his father, the truck's owner, settled with the cabin owner for the maximum limits of the insurance policy, but the cabin owner sought additional damages from the insurance company for its failure to promptly clean up the property. Following summary judgment for the insurance company and a reversal and remand by this court, the superior court held an evidentiary hearing to decide whether the insurance company had assumed a duty to the cabin owner independent of the duty it owed its insureds. The superior court found there was no such duty.

The cabin owner and the insureds appeal. The cabin owner contends that the superior court erred by finding no actionable duty and that it deprived him of due process by failing to consider his arguments before entering proposed findings of fact

and conclusions of law and awarding attorney's fees. The insureds argue that the superior court erred by deciding that they were precluded from further participation in the litigation once they entered into a settlement and were voluntarily dismissed from the case.

We conclude that the superior court did not clearly err in its findings of fact about the existence of an independent duty and that it did not violate the cabin owner's due process rights. We also conclude that the insureds were no longer parties to the case at the time they sought to renew their participation in it, and their arguments that they were entitled to either joinder or intervention are waived for lack of briefing. We therefore affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In November 2011 Joshua Martinez lost control of the pickup truck he was driving and crashed into Charles Burnett's cabin. The accident damaged the cabin's heating fuel tank, causing the fuel to drain onto the property and under the cabin. Burnett alleged that he also suffered bodily injuries, including respiratory issues from breathing fumes from the spill.

Joshua Martinez was insured by Government Employees Insurance Company (GEICO) under an auto policy issued to his father, Robert Martinez. Two days after the accident, the Alaska Department of Environmental Conservation (DEC) advised GEICO to hire a qualified environmental consultant and crew to clean up the fuel spill. GEICO's adjuster, Katie Johns, spoke with Burnett. According to Johns, Burnett agreed to call contractors for estimates; according to Burnett, he expressed an interest in doing the cleanup himself but was told he was not allowed to. Burnett did contact a qualified environmental engineer, Suzan Amundsen, who provided what Johns believed to be a reasonable estimate of cleanup costs. But Burnett continued to insist on doing the

cleanup himself; he offered to do it for $25,000, approximately the amount of Amundsen's bid. DEC did not consider Burnett qualified to handle the cleanup because of his lack of the required certifications, and Johns told Burnett that GEICO could not authorize him to do it.

The parties were at an impasse through 2012, with Burnett insisting on doing the cleanup himself and GEICO insisting that it had to be done by a DEC-approved contractor. The fuel spread farther across Burnett's property but was finally cleaned up in October 2013 by a contractor under Amundsen's supervision. DEC provided a pollution site closure letter in April 2014, which noted that remaining pollution on the property did "not pose an unacceptable risk to human health or the environment and [that] no further remedial action [would] be required." The letter did, however, reserve DEC's right to require "additional assessment and/or cleanup action" if further pollution was discovered.

## B. Proceedings

Burnett sued the Martinezes and GEICO in September 2012, while his property was still awaiting cleanup. In March 2014, after the cleanup was completed, GEICO paid Burnett the limits of the Martinezes' insurance policy to settle and release all his claims against them, though he reserved his claims against GEICO. The parties agreed to dismiss with prejudice "all claims that were or could have been asserted" by Burnett against the Martinezes. The court further ordered that the Martinezes' names be removed from the case caption.

The superior court then granted summary judgment to GEICO on Burnett's remaining claims, finding that GEICO owed him "no actionable duty."[1] The court also

---

[1]     *See Burnett v. Gov't Emps. Ins. Co.* (*Burnett I*), 389 P.3d 27, 29 (Alaska 2017).

awarded GEICO attorney's fees under Alaska Civil Rule 82 and costs under Civil Rule 79. On Burnett's appeal we reversed the grant of summary judgment, holding that "GEICO may owe Burnett an independent duty" as defined by the Restatement (Second) of Torts § 323 ("Negligent Performance of Undertaking to Render Services").[2] We remanded for "an evidentiary hearing or trial" at which Burnett was to "have an opportunity to try to establish that independent duty" as a factual matter.[3]

### 1.    The Martinezes' actions following remand

The Martinezes were not parties to the appeal in *Burnett I*, having settled and been dismissed from the case three years before. After remand, however, in early 2018, the Martinezes' attorney again entered an appearance, though he acknowledged that "[n]o claims are being pursued against the Martinez[es] at this time and it is the Martinez[es'] contention that no claims can be brought against them." The Martinezes filed a memorandum arguing that without "a proper cleanup" they were exposed to potential future liability; they also filed a motion to compel Burnett to disclose the remaining pollution prior to any sale of the property. The court granted the unopposed motion, and the Martinezes filed a lis pendens against the property.

GEICO then filed a motion to preclude the Martinezes' further participation in the case, noting that all claims against them had been dismissed with prejudice and that the case on remand from *Burnett I* was limited to the issue whether GEICO owed Burnett an independent duty, an issue in which the Martinezes had no interest. The Martinezes filed a motion to intervene. But the court granted GEICO's motion to preclude their further participation, concluding that the earlier voluntary dismissal with

---

[2]    *Id.* at 32-33.

[3]    *Id.*

prejudice was "a final judgment on the merits" and the Martinezes' further participation in the case was barred by res judicata.

### 2. The Burnett-GEICO dispute following remand

The superior court held an evidentiary hearing in April 2018 on a single issue: whether GEICO owed Burnett an independent duty in its conduct of the fuel oil cleanup. The court heard the testimony of seven witnesses: two DEC employees; the environmental engineer, Amundsen; the GEICO adjuster, Johns; Burnett; Burnett's attorney, Ken Jacobus; and the Martinezes' former insurer-appointed attorney. At the close of the hearing the court asked both parties to submit "written closing arguments and proposed findings of fact and conclusions of law"; the parties agreed to provide them by June 1.

On June 1 the court reviewed, adopted, and signed GEICO's proposed findings and conclusions. The court found that Burnett had failed to establish that GEICO owed him a duty independent of the duty GEICO owed to its insureds. The court further found that even if there were such a duty, Burnett had failed to prove that GEICO breached it or that he suffered harm as a result. Burnett's own proposed findings of fact and conclusions of law reached the courthouse on June 4, three days after the court had issued its decision. The court entered final judgment for GEICO and, pursuant to Civil Rules 79 and 82, awarded the insurer its attorney's fees and costs, including those incurred before the *Burnett I* appeal.

Burnett appeals the superior court's finding that GEICO did not owe him an independent duty, its adoption of GEICO's proposed findings and conclusions, and its award of pre-remand attorney's fees and costs to GEICO. The Martinezes appeal the superior court's order precluding them from participating in the case on remand.

## III.  STANDARD OF REVIEW

"We review de novo whether the superior court correctly applied our mandate on remand."[4]  "We review a trial court's factual findings for clear error, which is found when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[5]  Determining "[w]hether there was a violation of due process is a question of law that we review de novo, adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[6]  Questions regarding the interpretation of procedural rules are also reviewed de novo.[7]

## IV.  DISCUSSION

### A.  The Superior Court On Remand Correctly Followed The Mandate In *Burnett I*.

Burnett first argues that the superior court failed to follow our remand instructions in *Burnett I*.  In that opinion we observed that "GEICO may owe Burnett an independent duty under [Restatement (Second) of Torts] § 323, and he should have an opportunity to try to establish that independent duty at an evidentiary hearing or trial"; we therefore remanded the case "for further proceedings consistent with this opinion."[8]  The superior court held an evidentiary hearing on remand, announcing at the outset that

---

[4]      *Ivy v. Calais Co.*, 397 P.3d 267, 272 (Alaska 2017).

[5]      *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004).

[6]      *Paula E. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 422, 430 (Alaska 2012) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000)).

[7]      *Ebli v. State, Dep't of Corr.*, 451 P.3d 382, 387 (Alaska 2019).

[8]      *Burnett I*, 389 P.3d at 32-33.

"the issue is whether GEICO may owe an independent duty as framed by the Supreme Court under § 323."

Burnett contends, however, that because he "established all the facts set forth as recognized in the [*Burnett I*] opinion . . . he should have been entitled to judgment that there was an independent duty," and that the superior court's finding that there was no independent duty was therefore "not in accord with [*Burnett I*]." This misstates our holding; we did not recognize any facts as "established." The case was first appealed from a grant of summary judgment on the duty issue.[9] There had not yet been any evidentiary proceedings that could have resulted in findings of fact.[10] On appeal, therefore, we viewed the facts "in the light most favorable to Burnett," the nonmoving party, and applying this standard we concluded that there was "a genuine dispute whether GEICO affirmatively undertook an independent duty to Burnett through its interactions with him."[11] The superior court's decision to hold an evidentiary hearing to resolve this genuine factual dispute followed the instructions on remand.

**B.      The Superior Court Did Not Clearly Err In Finding That GEICO Did Not Owe Burnett An Actionable Duty Under § 323**.

The issue to be decided on remand — whether GEICO owed Burnett an independent duty related to the cleanup of his property — was based on the Restatement

---

[9]      *Id.* at 29.

[10]      *Id.*; *see* Alaska R. Civ. P. 56(c) ("Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").

[11]      *Burnett I*, 389 P.3d at 32.

(Second) of Torts.[12]  Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[13]

As we noted in *Burnett I*, the basis of Burnett's potential § 323 claim was "not some kind of failure or wrongful conduct during GEICO's normal adjusting activities" on behalf of its insured, but rather whether there was an "independent and separate agreement" between GEICO and Burnett.[14]  "[E]vidence that the undertaking is for the plaintiff's benefit is a prerequisite to liability" under § 323.[15]

Burnett does not cite to any evidence adduced on remand showing an independent agreement of the sort we said must be proven.  Nor does he identify any specific findings of fact made by the superior court that he contends are clearly erroneous.  Indeed, Burnett concedes that "GEICO undertook to clean[]up the property on behalf of its insureds, the Martinez defendants," contending that he reasonably "relied on GEICO's undertaking to clean up the property to his detriment."  Essentially,

---

[12]    *See* RESTATEMENT (SECOND) OF TORTS § 323 (AM. LAW INST. 1965).

[13]    *Id.*

[14]    389 P.3d at 31-32.

[15]    *Alaskan Vill., Inc. v. Smalley ex rel. Smalley*, 720 P.2d 945, 947 (Alaska 1986).

Burnett's argument appears to be that he reasonably relied on GEICO's performance of the duty it already owed by contract *to its insureds*, when what he was required to prove on remand was that "GEICO affirmatively undertook *an independent duty to Burnett* through its interactions with him."[16]

The superior court found there was no such undertaking; it concluded that Burnett "failed to establish . . . the first prong of the duty analysis under § 323: that GEICO undertook a duty to him to clean up the fuel spill on his property through an agreement with him, separate from and independent of its duties to the Martinezes, to do so." The court found that Johns, GEICO's insurance adjuster, was in direct contact with Burnett from the end of November 2011 until the beginning of May 2012, at which time further communication took place through Burnett's and the Martinezes' attorneys. Burnett himself testified that Johns told him "[m]ore than once" that GEICO's responsibility was to "the [S]tate and the Martinezes." When asked whether he was aware from the outset that GEICO was there "to protect the Martinezes' interest," Burnett answered, "[That] would be my understanding."

The superior court also found that GEICO never represented "to Burnett that it was proposing to clean up the spill as a[n independent] service or benefit to him," and that Burnett never "believe[d] that GEICO was proposing to clean up the spill as a[n independent] service or benefit to him." Johns testified that she told Burnett that GEICO "couldn't leave Josh Martinez open to a claim against the State by allowing [Burnett] . . . or [another] non-qualified individual to clean it up." For his part, Burnett testified that he was aware that GEICO was the Martinezes' insurer and that GEICO "had to represent their client." In his brief Burnett admits that Johns told him in their discussions about

---

[16]     *Burnett I*, 389 P.3d at 32 (emphasis added).

the cleanup "that GEICO needed to protect [Martinez] from potential liability to the State of Alaska."

There is sufficient record support for the superior court's finding that GEICO was acting as part of its "normal adjusting activities" to protect its insured by cleaning the spill, not acting to independently benefit Burnett.[17] The superior court did not clearly err when it found that Burnett and GEICO never reached an independent agreement regarding spill cleanup.

### C.    The Superior Court Did Not Deny Burnett Due Process.

Burnett argues that the superior court violated his rights to procedural due process in two ways:  first by adopting GEICO's proposed findings of fact and conclusions of law before having received Burnett's own proposed findings and conclusions, and second by awarding attorney's fees for GEICO's work prior to the *Burnett I* remand without allowing Burnett the opportunity to present his position on the issue.  Neither claim has merit.

---

[17]    Burnett alternatively argues that an actionable duty existed under the multi-factor test outlined in *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554, 555 (Alaska 1981).  But we have found "no need to rely on the *D.S.W.* factors in deciding whether an actionable duty exists if the duty issue is governed by recognized principles of tort law."  *State v. Sandsness*, 72 P.3d 299, 305 (Alaska 2003); *see also Kallstrom v. United States*, 43 P.3d 162, 167 (Alaska 2002) ("We apply the [*D.S.W.*] factors . . . when the facts under consideration are not covered by statute, regulation, contract, or case law.").  Restatement § 323 is one such "recognized principle of tort law."  Even if that were not the case, we would consider the issue waived, as Burnett failed to argue the *D.S.W.* factors in the superior court.  *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (holding that "[i]ssues not properly raised or briefed at trial are not properly before this court on appeal" (alteration in original) (quoting *Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011))).

#### 1. The superior court did not violate Burnett's due process rights by adopting GEICO's proposed findings of fact and conclusions of law before receiving Burnett's late-filed submissions.

At the close of the evidentiary hearing, the superior court asked the parties to propose a reasonable deadline for their submissions of written closing arguments and proposed findings of fact and conclusions of law. Burnett's counsel suggested mid-May, GEICO's counsel agreed, and the court responded, "Mid-May. How about [I] make it June 1." Both parties agreed. The court added, "I don't mind extensions, it's just — let's make them realistic, right?"

GEICO's counsel submitted proposed findings and conclusions on June 1, the day they were due. The superior court "reviewed [the proposed findings and conclusions] in detail" before adopting them "in their entirety as the court's findings," signing them that day. Although Burnett put his submissions in the mail on June 1, the court received them three days later, on June 4.

Burnett argues that the court violated his due process rights by issuing its findings and conclusions — in the form of GEICO's proposals — without waiting to review his competing submissions. He argues that his submissions were in fact timely. Asserting that the Alaska Rules of Civil Procedure and the Alaska Administrative Rules give no specific guidance on the timeliness of pleadings filed by mail, Burnett relies on Alaska Appellate Rule 502.1, which provides that when documents are sent to the courthouse by mail with an official United States Postal Service postmark, "the date of filing will be deemed to be the date of mailing."

But Appellate Rule 502.1 does not govern procedure in the trial courts;[18]

---

[18]    *See* Alaska R. App. P. 501 ("Part Five of these rules (Rules 501 through 523) applies to all proceedings in the supreme court and the court of appeals.").

the Civil Rules do.[19] Alaska Civil Rule 5(e) provides that "[t]he filing of pleadings and other papers with the court . . . shall be made by filing them with the clerk of the court at the court location where the case is filed unless otherwise directed by the court."[20] Interpreting this rule, the court of appeals has observed that "pleadings in the superior court . . . are still governed by the common-law rule that a document is 'filed' when it is received by the court, not when it is mailed."[21] As support the court of appeals discussed an election law case, *Silides v. Thomas*, in which we addressed when a disclosure was deemed "filed" with the Alaska Public Offices Commission for purposes of compliance with a statutory filing requirement.[22] We noted in *Silides* that "[t]he definition of 'file' is well established in the law. It has been consistently held that a document is filed only when the proper office has received it, and that it is not considered filed when it is deposited in the mails."[23]

---

[19]    *See* Alaska R. Civ. P. 1 ("The procedure in the superior court and, so far as applicable, in the district court shall be governed by these rules in all actions or proceedings of a civil nature — legal, equitable, or otherwise.").

[20]    Alaska R. Civ. P. 5(e).

[21]    *Black v. State*, 76 P.3d 417, 419 (Alaska App. 2003).

[22]    *Id.* at 418-19 (discussing 559 P.2d 80 (Alaska 1977)).

[23]    559 P.2d at 88; *see also United States ex rel. Tenn. Valley Auth. v. Easement & Right-of-Way*, 386 F.2d 769, 771 (6th Cir. 1967) (holding that filing in takings case was valid only after clerk received it); *Wirtz v. Local Union 169, Int'l Hod Carriers', Bldg. & Common Laborers' Union of Am., AFL CIO*, 246 F. Supp. 741, 750 (D. Nev. 1965) (" 'The use of the word "file" or "filing" in a legal sense is almost universally held to mean the delivery of the paper or document in question to the proper officer . . . .' A document is not filed when it is deposited in the mails . . . ." (citation omitted) (quoting *Creasy v. United States*, 4 F. Supp. 175, 177 (W.D. Va. 1933))).

Having provided a due date that the parties stipulated was more than reasonable, the superior court was not obliged to wait another few days to see whether Burnett would tardily submit something as well. We have never held that a court's enforcement of reasonable deadlines violates due process,[24] and we see no reason to do so in this case. "The crux of due process is an opportunity to be heard and the right to adequately represent one's interests."[25] Burnett's counsel asked for five or six weeks to prepare post-trial submissions and the court gave the parties two weeks more, indicating at the same time that "realistic" extensions would be granted if requested. There was nothing unreasonably short about the court-imposed deadline or unreasonably burdensome in the means for complying with it. Burnett's opportunity to be heard and to represent his interests — both at the evidentiary hearing and in post-trial submissions — was more than sufficient to satisfy due process.

### 2. The superior court did not violate Burnett's due process rights in its award of pre-remand attorney's fees to GEICO.

In a separate order signed the same day as the findings of fact and conclusions of law, the court advised GEICO that it did not need to move again for fees and costs that had been awarded in 2014, before the *Burnett I* appeal; those would be included in the final judgment, and GEICO's renewed motion for fees and costs had to address only what had been incurred since the remand. Burnett's second due process

---

[24]     *See, e.g.*, *Markham v. Kodiak Island Borough Bd. of Equalization*, 441 P.3d 943, 953-54 (Alaska 2019) (holding that Board did not violate party's due process rights in declining to consider late-filed documents where party had opportunity to provide documents in timely manner, including with an extended deadline); *Wilson v. State, Commercial Fisheries Entry Comm'n*, 770 P.2d 1126, 1130 (Alaska 1989) ("This court has in the past upheld reasonable filing deadlines against due process challenges.").

[25]     *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130 (Alaska 1999) (quoting *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988)).

argument is that the superior court violated his rights by "automatically" awarding the pre-*Burnett I* fees and costs to GEICO without first considering his argument that, as a result of the *Burnett I* decision, he was the prevailing party up to that point.[26]

But Burnett did present his position on the issue, albeit briefly. In his June 16, 2018 opposition to GEICO's motion for attorney's fees, Burnett argued, as he does on appeal, that "attorney fees should not be awarded against . . . Burnett for work performed prior to the first appellate decision" because "Burnett was the prevailing party on the first part of the case." Although this was after the court had indicated that it would award those fees to GEICO, Burnett clearly had the opportunity — which he took — to advise the court that this position should be reconsidered. The court ultimately did not make the attorney's fees award until July 30, over a month after Burnett had filed his opposition. We assume that the court read the parties' filings and considered all their arguments before making its award.[27]

As noted above, the fundamental tenets of due process include a meaningful opportunity to be heard.[28] The superior court's June 1 order made Burnett aware of the court's position on pre-remand attorney's fees. Burnett had ample opportunity to take issue with the court's stated intent to award those fees, and he did so. There was no violation of due process.

---

[26] 389 P.3d 27 (Alaska 2017).

[27] *See, e.g.*, *United States v. Duke*, 932 F.3d 1056, 1061 (8th Cir. 2019) ("We presume that the court considered the arguments before it."); *cf. Brodigan v. State*, 95 P.3d 940, 944 (Alaska App. 2004) ("[E]very act [of the court] is presumed to have been rightly done until the contrary appears." (second alteration in original) (quoting *Jerrel v. State*, 851 P.2d 1365, 1372 (Alaska App. 1993), *overruled on other grounds by David v. State*, 372 P.3d 265 (Alaska App. 2016))).

[28] *Church*, 973 P.2d at 1130.

**D.** **The Superior Court Did Not Err By Precluding Further Participation By The Martinezes Following Their Stipulated Dismissal.**

In early 2014, having reached a settlement, Burnett, the Martinezes, and GEICO stipulated to a dismissal with prejudice of all of Burnett's claims against the Martinezes pursuant to Civil Rule 41(a). The court accordingly signed an order dismissing the case "as to defendants Joshua M. Martinez and Robert Martinez," after which the Martinezes' names were deleted from the case caption. They did not participate in the case again until almost four years later, when in January 2018 their attorney entered another appearance for them even while asserting that "[n]o claims are being pursued against the Martinez[es] at this time and it is the Martinez[es'] contention that no claims can be brought against them," referencing the settlement and release. Notwithstanding the absence of any claims for them to either pursue or defend against, the Martinezes sought to present arguments about their allegedly continuing exposure to potential liability to the State or unknown third parties due to the property's contamination.

GEICO moved to preclude the Martinezes' continued participation, arguing that they were no longer parties to the case and had no apparent interest in the case's one remaining issue following the *Burnett I* remand: whether GEICO owed an independent duty to Burnett. The Martinezes then filed a motion to intervene, though citing only Alaska Civil Rules 19 and 20, governing joinder of parties, rather than Alaska Civil Rule 24, governing intervention. The superior court granted GEICO's motion, precluding "former defendants Joshua Martinez, Robert Martinez[,] and their counsel . . . from further participation in the case." The court issued a second order explaining its rationale: The 2014 stipulation to dismiss claims with prejudice had the effect of a final judgment on the merits as to those claims, and the Martinezes' further participation in the case was therefore barred by res judicata.

On appeal the Martinezes assert that notwithstanding their dismissal from the case they remained parties, entitled to continued participation at their election, because the court failed to enter an Alaska Civil Rule 54(b) final judgment on the settled claims against them.[29] They do not develop this argument in their brief, however, nor do we need to consider it. The court entered a final judgment on September 9, 2014, that specifically referenced both the grant of summary judgment on Burnett's claims against GEICO and the earlier dismissal with prejudice "of all of Burnett's claims against" the Martinezes. Assuming that the Martinezes were still parties to the action when the 2014 final judgment was entered, they were bound by that judgment to the same extent as the other parties, although — having voluntarily dismissed their claims — they had no right to appeal from it.[30] On Burnett's appeal, we reversed only "the superior court's grant of summary judgment to GEICO" and remanded for consideration of only Burnett's claim that GEICO owed him an independent duty.[31] Nothing about our mandate resurrected the Martinezes' dismissed claims or reinstated their party status.

As for whether the Martinezes had the right to rejoin the litigation after remand through intervention, we conclude that the argument is waived. In support of the

---

**29** Civil Rule 54(b) allows the court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," but "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

**30** *Deptula v. Simpson*, 164 P.3d 640, 643-44 (Alaska 2007) ("Where . . . a case is dismissed voluntarily, no appeal may be taken. This is so because voluntar[y] dismissal, when approved by the court, is considered a consent judgment, which is generally not subject to appellate review." (footnote omitted)); *Legge v. Greig*, 880 P.2d 606, 607 (Alaska 1994) ("One who acquiesces to a dismissal with prejudice waives the right to an appeal.").

**31** *Burnett I*, 389 P.2d 27, 32-33 (Alaska 2017).

Martinezes' intervention, Burnett quotes Civil Rule 19(a), "Joinder of Persons Needed for Just Adjudication," and the Martinezes mention Rule 19 several times in their brief, though without substantively discussing it. Neither party cites Civil Rule 24, which governs intervention,[32] and more importantly neither party substantively addresses the standards for intervention. Nor do Burnett or the Martinezes even mention the grounds given by the superior court for its decision to bar the Martinezes' further participation: that the stipulated dismissal with prejudice acted as res judicata as to "any claims between Burnett and Martinez regarding the vehicle crash and related injuries."[33] We conclude that any argument that the Martinezes should have been allowed to participate again in the case through either joinder or intervention is waived for lack of briefing.[34]

---

[32] "Joinder and intervention are different things." *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 655 (E.D. Tex. 2018). *But see Liberty Mut. Ins. Co. v. Shoemake*, 111 So. 3d 1207, 1211 n.1 (Miss. 2013) (recognizing "that joinder and intervention are distinct concepts governed by different procedural rules, although for [some] purposes they may be used interchangeably"). For example, "only a party may make a Rule 19 motion, although, of course, a court may sua sponte join a party for good cause," and a court may convert a non-party's Rule 19 joinder motion into a Rule 24 motion to intervene. *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995).

[33] *See DeNardo v. Calista Corp.*, 111 P.3d 326, 332 (Alaska 2005) (holding that stipulated dismissal with prejudice is "just as valid as a final judgment resulting from a trial on the merits[] and is res judicata as to all issues that were raised or could have been determined under the pleadings" (quoting *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997))); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2364 (4th ed. 2020) (explaining that dismissal with prejudice is "complete adjudication of the claims and a bar to a further action on them between the parties").

[34] *See Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016) (holding that "where a point is given only a cursory statement in the argument portion of a brief, [it] will not be considered on appeal" (quoting *Burts v. Burts*, 266 P.3d 337, 344 (Alaska

The Martinezes raise a number of other issues in their brief, most of them attacking GEICO's conduct of the cleanup and its defense of the resulting litigation. As non-parties, however, the Martinezes lack standing to argue issues other than the propriety of the court's order precluding their reentry into the case.[35] We therefore do not consider their remaining arguments.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[34] (...continued)
2011))).

[35] *Hopper v. Estate of Goard*, 386 P.3d 1245, 1247 n.2 (Alaska 2017) ("Although we review the denial of [appellants'] motion to intervene, we do not reach their other arguments because '[a] failed intervenor has standing to appeal only the denial of intervention' and not the merits of the adjudication." (second alteration in original) (quoting *Scammon Bay Ass'n v. Ulak*, 126 P.3d 138, 142 (Alaska 2005))).