*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CAMILLA HUSSEIN-SCOTT, | ) | |
| | ) | Supreme Court No. S-14561 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-06621 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JERRY SCOTT, | ) | |
| | ) | No. 6768 – March 29, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances:  Terry C. Aglietti, Aglietti, Offret & Woofter, Anchorage, for Appellant.  Gregory S. Parvin, Wasilla, for Appellee.

Before:  Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

FABE, Chief Justice.

I.     INTRODUCTION

Jerry Scott and Camilla Hussein-Scott dissolved their marriage and signed a marital settlement agreement requiring Jerry to pay alimony every month.  On the line of the agreement reserved for the alimony termination date, Jerry wrote "12/2/2020," which is the 18th birthday of their youngest daughter, Myriam.  But on the next line, in

a space left blank for "other specifics," Jerry wrote, "To be paid until Yasmine Scott's 18th birthday or until remarriage." Yasmine is the couple's middle daughter, and her 18th birthday is August 1, 2015. We are asked if Jerry's alimony obligation ends on the earlier date or the later one. Relying on the well-established rule that the more important or principal clause controls, we conclude that Jerry's support obligation terminates on December 2, 2020, or upon Camilla's remarriage if earlier.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Jerry Scott and Camilla Hussein-Scott were married in Eugene, Oregon and had three children, Salome, Yasmine, and Myriam. The couple separated after 13 years of marriage. At the time, Camilla was living in Florida with the children, and Jerry was working in Alaska. Four years later, Jerry filed a petition to dissolve the marriage, and Jerry and Camilla signed a marital settlement agreement. Jerry handwrote the agreement's terms on a pre-printed form. The agreement disposed of the marital assets and liabilities and set terms for child support, custody, and visitation, as well as spousal support. A Florida court adopted the agreement by reference and dissolved the marriage.

The current dispute arose because the spousal support provision of the settlement agreement is ambiguous. The pre-printed settlement agreement form required the parties to specify the amount, frequency, and duration of alimony payments. The parties indicated that Jerry would pay Camilla $10,000 every month, continuing until "12/2/2020." This is the 18th birthday of their youngest daughter, Myriam. The next line of the form asked the parties to "Explain [the] type of alimony (temporary, permanent, rehabilitative, and/or lump sum) and any other specifics." Jerry circled the word "temporary," and, in the space provided, wrote "To be paid until Yasmine Scott's 18th birthday or until remarriage." Yasmine is the couple's middle daughter. She will turn 18 on August 1, 2015, more than five years before the termination date specified on

the line above. As the superior court noted, "Obviously the parties intended to have both descriptions identify the same date. Thus they either erred by using the wrong date (12/2/2020) for Yasmine's 18th birthday or they erred in the descriptive phrase by referring to Yasmine rather than Myriam."

**B.      Proceedings**

Jerry and Camilla now both live in Alaska. In 2009 they registered the Florida divorce decree and marital settlement agreement in Alaska for enforcement and modification.

In 2011 Jerry filed a motion in the Alaska superior court to end his alimony payments, or, if that were not successful, to clarify his obligation under the settlement agreement. The trial court denied Jerry's motion to end payments, and Jerry does not appeal this ruling. The court held an evidentiary hearing to resolve the above-noted ambiguity.

At the hearing, Jerry and Camilla gave conflicting testimony about the intended termination date of alimony payments. Jerry testified that the alimony payments were meant to support Camilla while she home-schooled their oldest daughter, Salome. Once Salome turned 18 and finished with her home-schooling, the other children were to attend public school. Camilla was to receive support payments for four more years to give her a chance to complete college or start a business. Four years after Salome turns 18 is the same year Yasmine turns 18, and, according to Jerry, they decided to use Yasmine's 18th birthday as a convenient end date. Jerry testified that the date 12/2/2020 was a mistake; Jerry claims he got mixed up and accidently entered the date child support, not spousal support, would end—that is, Myriam's 18th birthday. Jerry also testified that he and Camilla sat at the dinner table together and discussed the terms of the agreement equably.

Camilla testified that Jerry's version of events was a story that Jerry "made up." She explained that the support payments were supposed to help her raise all three children and pay the mortgages on her properties. She testified that the support payments were supposed to end when Myriam, their youngest daughter, turned 18. Finally, she agreed that they discussed the agreement at the dinner table, and that she had an opportunity to review the terms, but she also claimed that Jerry made her discuss the agreement in front of their children and that Jerry threatened that if she did not sign the papers he would get a divorce "she wouldn't like." Camilla alleged that she had been coerced into getting the divorce and signing the settlement agreement.

The superior court found neither party credible. Citing by analogy to a provision of the Uniform Commercial Code stating that, when in conflict, words prevail over numbers, the court found that "the more likely error would occur in the entry of the bald numerical date rather than in the narrative description of the end date." The superior court held that Jerry's obligation to pay spousal support ends on August 1, 2016.[1] Camilla appeals.

## III.    STANDARD OF REVIEW

We are asked to review the superior court's interpretation of a marital settlement agreement. This is a question of law, which we consider de novo.[2] But if we rely on extrinsic evidence, we will accept the factual findings of the superior court unless they are unsupported by substantial evidence.[3]

---

[1]    Both parties agree that, if the earlier date controls, the trial court erred by finding that the payments will end in 2016 instead of 2015, when Yasmine turns 18.

[2]    *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998) (citing *Wahl v. Wahl*, 945 P.2d 1229, 1231 n.2 (Alaska 1997)).

[3]    *Id*. (citing *Wahl*, 945 P.2d at 1232 n.3).

## IV.   CHOICE OF LAW

Like every other state, Alaska has adopted the Uniform Interstate Family Support Act (UIFSA), which guides our choice-of-law determination in this case. Under UIFSA, the duration of current obligations in a marital settlement agreement is governed by the law of the issuing state.[4]  In this case, the issuing state is Florida.  We will therefore interpret the agreement according to Florida law.

## V.   DISCUSSION

### A.   General Contract Principles Apply To Determine The Meaning Of The Settlement Agreement.

Under both Florida and Alaska law, an ambiguous settlement agreement is interpreted using basic contract principles.[5]  These principles include considering the contract as a whole, looking to the intent of the parties, avoiding absurd results, and constructing the contract such that the result is fair, customary, and such as a prudent person would naturally execute.[6]

### B.   The Lower Court Did Not Err In Disregarding The Parties' Testimony.

Camilla argues that the alimony termination date is not ambiguous because the available evidence makes the intent of the parties obvious.  She claims that it was clear error to find her testimony not credible and urges us to draw our own conclusions

---

[4]     AS 25.25.604(a) ("The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order.").

[5]     *See, e.g.*, *Underwood v. Underwood*, 64 So. 2d 281, 287 (Fla. 1953) (citing *Bergman v. Bergman*, 199 So. 920, 921 (Fla. 1940)) ("That these [settlement] agreements should be construed and interpreted as other contracts is no longer open to question."); *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011).

[6]     *Florida Power Corp. v. City of Tallahassee*, 18 So. 2d 671, 674 (Fla. 1944).

from the hearing. She also contends that the superior court erred by ruling with insufficient factual findings.

But we have held as a matter of law that self-serving testimony at the time of litigation about the parties' past intentions is not particularly probative.[7] And even to the extent that type of testimony is probative, assessment of witness credibility is the exclusive province of the fact-finder, and we will not revisit that assessment on appeal.[8] We have also held that where credible evidence of intent is unavailable, the court may still interpret an ambiguous settlement agreement as a matter of law.[9] We therefore conclude that the superior court did not err by declining to place weight on the testimony of either party.

### C. General Contract Principles Suggest That The Term "12/2/2020" Prevails Over The Phrase "Yasmine Scott's 18th Birthday."

The preferred method of interpreting contracts is to reconcile conflicting terms in a way that gives effect to them all.[10] That is not possible here.[11] When two terms cannot be reconciled, there are several tools of contract interpretation that may determine which term prevails.

---

[7]     *Abood v. Abood*, 119 P.3d 980, 986 (Alaska 2005); *Peterson v. Wirum*, 625 P.2d 866, 869-70 (Alaska 1981).

[8]     *Anthony v. State*, 521 P.2d 486, 492 (Alaska 1974).

[9]     *See Hartley v. Hartley*, 205 P.3d 342, 350 (Alaska 2009); *Keffer v. Keffer*, 852 P.2d 394, 397-98 (Alaska 1993).

[10]     *See Florida Power Corp.*, 18 So. 2d at 674; *McBain v. Pratt*, 514 P.2d 823, 828 (Alaska 1973).

[11]     It may be possible to harmonize the terms in the agreement by reading it such that Camilla would be guaranteed payments until Yasmine's 18th birthday, and then afterward until 12/2/2020 or remarriage, whichever is sooner. But neither party has indicated that this was their intent when drafting the agreement.

One simple rule is to enforce the earlier term.[12]  Another is to construe the contract against its drafter, in this case Jerry.[13]  While these tools are disfavored in Alaska in interpreting marriage settlement agreements,[14] they are available under Florida law.[15]  And both suggest that the earlier term "12/2/2020" prevails over the later phrase "Yasmine Scott's 18th birthday."

A tool of interpretation that can be found in both Alaska and Florida law is that the more important or more specific term prevails:

> The better and apparent majority rule for resolving irreconcilable differences between contract clauses is to

---

[12]  11 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 32:15 (4th ed. 2012) ("Historically, one of the first answers provided by the courts for how to deal with conflicting clauses was to enforce the earlier clause and disregard the later.  This approach is still followed today.").

[13]  RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981)  ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.").

[14]  We have refused to construe a marriage settlement agreement against the drafting party, *see Zito v. Zito*, 969 P.2d 1144, 1147 (Alaska 1998) (citing *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 25 n.7 (Alaska 1997)), and we have never before favored one term over another simply because it appears earlier in the contract.  Williston looks on this latter method with disfavor:  "Because of the arbitrary and artificial quality of this rule of interpretation, it is not universally followed and will only be accepted as a rule of last resort."  11 WILLISTON & LORD, *supra* note 12.

[15]  *See Copacabana Records, Inc. v. WEA Latina, Inc.*, 791 So. 2d 1179, 1180 (Fla. Dist. App. 2001) (citations omitted) (applying the rule that an earlier clause prevails over a later one)*; McIlmoil v. McIlmoil*, 784 So. 2d 557, 562 (Fla. Dist. App. 2001) (citing *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000)) (construing a marriage settlement agreement against its drafter).

enforce the clause relatively more important or principal to the contract. This rule is tempered by the corollary that the more specific clause controls the more general.[16]

Here, the settlement agreement form contained a line specifically reserved for the date on which alimony payments would cease, and a second space left blank for the inclusion of "any other specifics." Jerry entered the term "12/2/2020" on the line reserved for the alimony termination date, and entered the written phrase "[t]o be paid until Yasmine Scott's 18th birthday or until remarriage" in the second blank space for "any other specifics." Because the second space was not designated for the termination date, the words written in that space are entitled to less weight when trying to determine when payments will end. The line specifically designated for the termination date contains the more important information on that topic.

Moreover, the phrase "[t]o be paid until Yasmine Scott's 18th birthday" is not the only term that appears in the space designated for "any other specifics," further reducing its importance. The phrase "[t]o be paid until Yasmine Scott's 18th birthday" is coupled with the language "or until remarriage," creating a limiting condition that alimony payments will end upon Camilla's remarriage. Unlike the date that the payments will end, this condition seems to be exactly the type of "other specific" that could not be expressed on the line reserved for the termination date.

Nor is the term "Yasmine Scott's 18th birthday" more specific than 12/2/2020, entitling it to priority. Jerry contends that *specific language* means *more*

---

[16]     11 WILLISTON & LORD, *supra* note 12 (citations omitted); *see also Kochan v. Am. Fire & Cas. Co.*, 200 So. 2d 213, 219 (Fla. Dist. App. 1967) (citations omitted) ("[I]t is well settled law that minor provisions of contracts should be interpreted so as not to conflict with the main purpose. Indeed, minor provisions should be sacrificed if irreconcilable with the general intent."); *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004) ("[I]f there is a conflict, the specific section will control over the general.").

*detailed language* and argues that the narrative description contains more information than does the mere identification of a date. But the date 12/2/2020 is unequivocal and, unlike "Yasmine Scott's 18th birthday," requires no application of outside information. It is therefore at least as specific as the reference to Yasmine's 18th birthday.

**D.    It Was Error To Interpret The Settlement Agreement According To The Uniform Commercial Code.**

The superior court applied, by analogy, a provision from the Uniform Commercial Code that has been adopted in both Florida and Alaska:

> If an instrument contains contradictory terms, typewritten terms prevail over printed terms, handwritten terms prevail over both, and words prevail over numbers.[17]

Following the rule, the superior court gave preference to the words "Yasmine Scott's 18th birthday" over the numbers "12/2/2020." Jerry asks us to affirm this interpretation.

Both the superior court and Jerry recognize that the UCC is not controlling here because that provision only applies to negotiable instruments.[18] But both Florida and Alaska courts have applied the UCC by analogy to non-UCC situations.[19] Even so, that analogy is only persuasive where the contract in question is similar to a commercial

---

[17]    FLA. STAT. § 673.1141 (2013); AS 45.03.114.

[18]    FLA. STAT. § 673.1041 (2013); AS 45.03.104.

[19]    *See, e.g.*, *W.E. Johnson Equip. Co. v. United Airlines, Inc.*, 238 So. 2d 98, 100 (Fla. 1970) (finding an implied warranty of fitness for a particular purpose in lease contracts after noting that the UCC implies such a warranty in sales contracts); *Cousineau v. Walker*, 613 P.2d 608, 615-16 (Alaska 1980) (noting the UCC's rejection of "caveat emptor" in the sale of goods, and applying it to a real property transaction).

one.[20] At least one Florida court has refused to rely on the analogy where there is no such similarity.[21]

The words and numbers in negotiable instruments are not like the words and numbers in the contested alimony provision. In a negotiable instrument, such as a check, the drafter uses both words and numerals to represent the same number. In that context, it makes sense to believe that it is easier to make a mistake by transposing two digits or misplacing a period when dealing with numerals than when writing the amount out longhand. But we see no reason to believe that Jerry was more likely to write "12/2/2020" when he meant "8/1/2015" than he was to write "Yasmine" when he meant "Myriam." The mental error in either case — thinking of the wrong daughter — is the same.

Jerry is also incorrect that "[t]he superior court made a *factual* determination that it would be 'less likely to select the wrong child's name when identifying the particular birthday as the end point' than to erroneously select the actual date." (Emphasis added.) This determination was not rooted in the specific facts of this case. This was a ruling of law reconciling conflicting contract terms, based on a possibly erroneous observation about human nature in general. It is not entitled to deference as a factual finding.

---

[20] The cases in the footnote above made this similarity explicit. *See W.E. Johnson Equip. Co.*, 238 So. 2d at 100 ("The reasons for imposing the warranty of fitness in sales cases are often present in lease transactions."); *Cousineau*, 613 P.2d at 616 ("Other than tradition, no reason exists for treating land sales differently from the sale of commercial goods insofar as application of the doctrine of caveat emptor is involved.").

[21] *See, e.g.*, *Favors v. Firestone Tire & Rubber Co.*, 309 So. 2d 69, 72 (Fla. Dist. App. 1975) ("The bailment involved in the case subjudice was not similar to a sale and we see no reason to extend Uniform Commercial Code warranties to this type of bailment.").

## V.      CONCLUSION

Because the term "12/2/2020" is more important than the later, contradictory term, we conclude that Jerry Scott's spousal support obligations terminate on the earlier of December 2, 2020 or Camilla's remarriage. The superior court's order is REVERSED and the case is REMANDED for correction of the termination date of spousal support.