*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| CROWLEY MARINE SERVICES, INC., | ) )  Supreme Court Nos. S-18716/18775 |
| | )  (Consolidated) |
| Appellant, | ) |
| | )  Superior Court Nos. 2NO-04-00100 CI/ |
| v. | )  2NO-22-00147 CI |
| | ) |
| STATE OF ALASKA, | )  O P I N I O N |
| | ) |
| Appellee, | )  No. 7790 – October 3, 2025 |
| | ) |
| and | ) |
| | ) |
| DELTA WESTERN, LLC, | ) |
| | ) |
| Intervenor-Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Second Judicial District, Nome, Romano D. DiBenedetto, Judge.

Appearances:  Michael A. Grisham and Nathan Bishop, Dorsey & Whitney LLP, Anchorage, for Appellant.  Jeff Pickett, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee State of Alaska.  Maren R. Norton, Stoel Rives, Seattle, Washington, for Intervenor-Appellee.

Before:  Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

# I.  INTRODUCTION

When a company engages in a practice that the State believes substantially restricts competition counter to the public interest, the State may intercede and oppose the practice.  Such conflict may be resolved through negotiation of a consent decree.  A consent decree operates as a contract between the State and the company, and its aim is to balance competition in the impacted market.  In this matter, the State entered into a consent decree with a fuel distribution company operating in Western Alaska.  The decree required the fuel company to divest a portion of its fuel storage capacity in Bethel to a second distribution company before acquiring a regional competitor.

The acquiring fuel company and the second distribution company entered into a fuel storage contract that memorialized the divestment requirement under the terms of the consent decree.  However, neither the consent decree nor the fuel storage contract addressed what would happen to the contract should the consent decree be dissolved.  Sixteen years later, the superior court dissolved the consent decree.

The question here is whether the court's dissolution of the consent decree automatically terminated the fuel storage contract, and whether the court abused its discretion by permitting the distribution company to intervene in the consent decree dissolution proceeding.  For the reasons explained below, we hold that dissolution of the consent decree did not automatically terminate the parties' underlying fuel storage contract and that the superior court did not abuse its discretion by permitting the distribution company to intervene in the dissolution proceeding.

## II. FACTS AND PROCEEDINGS

### A. Consent Decree With The State Of Alaska

In 2004 Crowley[1] sought to purchase the Yukon Fuel Company (YFC), Crowley's competitor in the Western Alaska fuel distribution market. At that time, the two companies were the only market participants with the ability to deliver fuel in Western Alaska. The State thereafter sued Crowley for engaging in anticompetitive conduct prohibited by Alaska's consumer protection laws.[2] Concurrent with the State's complaint, the parties filed a proposed settlement (the consent decree) pursuant to the Alaska Restraint of Trade Act (ARTA).[3]

The proposed consent decree placed conditions on Crowley's ability to complete its acquisition of YFC by requiring that it contract with a third company, Delta Western, to entice that company to enter the shallow draft barge fuel distribution market. Among other terms, the consent decree required Crowley to "divest four million gallons of fuel storage capacity in Bethel, on fair and reasonable terms, to Delta Western."

Delta Western was not a party to the consent decree, and the consent decree expressly stated that nothing in its terms "created [a] benefit [for] any third party and nothing herein shall be construed to provide any rights to third parties." Finally, the consent decree stated that it would end by its own terms in 30 years or could be dissolved "upon order of [the] court for good cause."

---

[1]     Here, we use "Crowley" to refer collectively to Crowley Marine Services, Inc. and Crowley Maritime Corp.

[2]     *See* AS 45.50.471; AS 45.50.564; AS 45.50.568.

[3]     *See* AS 45.50.584 (providing for parties to enter consent decrees).

The superior court in Nome considered whether to approve the consent decree after a 60-day notice period and opportunity for public comment.[4] In August 2005 the court approved the consent decree.

## B. 2004 And 2015 Contracts With Delta Western

The consent decree required Crowley to divest four million gallons of fuel storage capacity at its Bethel tank farms to Delta Western. Therefore, in July 2004 Crowley and Delta Western entered into a divestment contract (the 2004 contract) so that Delta Western could "acquire the refined petroleum product storage capacity at the Bethel Tank Farm divested by Crowley and to enter into [the contract] referred to in the Consent Decree as the Crowley/Delta Western Agreement."

After a dispute arose regarding the 2004 contract, Crowley and Delta Western reached a settlement agreement wherein they agreed to negotiate a new contract. They entered into the new contract in 2015 (the 2015 contract). The term for that contract was five years, and it could be extended at Delta Western's option for three additional five-year periods. In February 2020 Delta Western exercised its extension right for a new five-year term through August 2025.

## C. Motion To Dissolve Consent Decree

In October 2021, Crowley moved to dissolve the consent decree pursuant to Alaska Civil Rule 60(b). Crowley's motion requested the superior court to order that "the contracts required by the Consent Decree also be terminated, or in the alternative that the terms be adjusted to reflect current market rates." Crowley asserted that market conditions had changed from the time that the court entered the consent decree and thus that the public interest no longer required the consent decree and related contracts to remain in place. Crowley served its motion on the State, the only other existing party

---

[4] *See* AS 45.50.584(b) (requiring 60-day period for interested persons to "file verified exceptions to the form or substance" of the consent decree and requiring "a full hearing" by the court of those exceptions before approving or refusing to enter the consent decree).

to the consent decree. The court signed Crowley's proposed order in January 2022, ordering "[t]he Consent Decree in this matter is terminated and of no further effect as of the effective date of this Order." The order did not address the impact or lack thereof on the 2015 contract. Crowley subsequently notified Delta Western that "pursuant to" the court's order, it would be terminating the 2015 contract. Months later, in August 2022, Crowley notified Delta Western that it would no longer store fuel for Delta Western at its Bethel facility "under the terms of the terminated 2015 [contract]."

**D.    Collateral Breach of Contract Complaint And Transfer To Nome Superior Court**

When Crowley refused to accept fuel from Delta Western pursuant to the terms of the 2015 contract, Delta Western filed a breach of contract action in Anchorage superior court. We refer to this proceeding as "the contract case." Delta Western asserted that the controversy involved "the 2015 [contract], the interpretation of its terms, and its relationship to the consent decree that was recently terminated." Citing irreparable harm, Delta Western sought declaratory and injunctive relief to enforce the 2015 contract.

Crowley counterclaimed, seeking a declaratory holding that the 2015 contract was "not valid after the termination of the Consent Decree," as well as damages associated with what it claimed was Delta Western's breach of the implied covenant of good faith and fair dealing.

While initial motion work regarding declaratory relief was pending, Crowley moved to transfer the contract case to Nome for consideration by the same judge who had presided over the consent decree matter, reasoning that Delta Western "s[ought] judicial determination of the effects of an order issued by the Nome Superior Court in [the] related [consent decree] case." Delta Western opposed, contending that "once that one-line order [dissolving the consent decree] was entered, the proceeding in Nome was terminated and the case was closed." Crowley asserted that the 2015 contract "only exist[ed] because it was required by the [consent decree]." It contended

that it would be "more judicially efficient and appropriate" for the court that dissolved the consent decree "to determine the effect of that Order on the 2015 [contract]." Later that month the Anchorage superior court approved the transfer, noting that "Delta Western was never given notice of the (unopposed) motion to terminate the Consent Decree" filed in Nome. It concluded that "it is possible that the Nome court would have declined to terminate the Consent Decree, or would have done so in a fashion preserving Delta Western's contractual rights" and that Delta Western "would likely have moved to intervene."

Shortly thereafter, the Nome superior court issued a preliminary ruling regarding the relationship between the termination of the consent decree and the contract between Crowley and Delta Western. It observed that "in terminating the consent decree, it never intended to allow Crowley Fuels out of every lease agreement that resulted from the consent decree." And it continued that to hold otherwise "would revert back to the circumstances that resulted in the antitrust litigation." The court preliminarily determined that the lease agreements entered into by Delta Western with Crowley stood in legal significance "independent of the consent decree." Crowley sought reconsideration, arguing that the Nome court's "sua sponte announcement of a preliminary ruling" violated its due process rights. The court denied Crowley's motion. And litigation of the contract case proceeded before the Nome superior court.[5]

### E. Subsequent Litigation In The Consent Decree Matter

After resolving two motions for partial summary judgment in Delta Western's favor in the contract case, the court sua sponte vacated its order dissolving the consent decree in the consent decree case, reasoning that it was "quite apparent to

---

[5] We discuss the proceedings in the contract case — which are stayed — only for context. The merits of any decisions in the contract case are not yet properly before us. *Crowley Marine Servs. et al. v. State et al.*, No S-18716/18775 (Alaska Supreme Court Order, July 24, 2023).

the court that [Delta Western] was never notified of [Crowley's] motion to terminate the consent decree." It then permitted Delta Western, who was not yet a party in the consent decree case, 30 days to file an opposition to Crowley's Rule 60(b) motion.[6] Crowley moved for reconsideration. The motion for reconsideration was deemed denied after 30 days.[7]

Delta Western subsequently moved to intervene in the consent decree case, contending that theories of both mandatory and permissive intervention, as well as joinder, supported its participation as a party. Crowley opposed Delta Western's motion, as did the State. In addition to arguing that the court could not join Delta Western under Alaska Civil Rule 19, Crowley asserted that Delta Western failed to meet the criteria for either permissive or mandatory intervention. Among other arguments, Crowley contended that intervention was improper because the consent decree case was a "government antitrust enforcement action." The court granted Delta Western's motion to intervene in mid-February 2023.

With the intervention motion work pending, Delta Western also filed a "limited opposition" to Crowley's Rule 60(b) motion to dissolve the consent decree. Taking "no position on whether the [c]onsent [d]ecree . . . should be terminated," Delta Western claimed that the consent decree was "separate and distinct" from its 2015 contract. It also asserted that the dissolution of the consent decree "in no way [gave] rise to a basis to terminate the 2015 [contract]."

---

[6] That same day the court issued a stay in the contract case "until a final decision [was] rendered on Crowley's motion to terminate the consent decree" in the consent decree case.

[7] *See* Alaska R. Civ. P. 77(k)(4) ("If the motion for reconsideration has not been ruled upon by the court within 30 days from the date of the filing of the motion, or within 30 days of the date of filing of a response requested by the court, whichever is later, the motion shall be taken as denied.").

After considering Delta Western's filing, as well as Crowley's and the State's replies, the court once again dissolved the consent decree. The court further held that dissolving the consent decree did "not automatically terminate contracts entered into pursuant to [it]," but added that Crowley could seek "relief from obligations imposed by an agreement" with Delta Western in "a separate action."

Crowley appeals the court's second order dissolving the consent decree.[8]

## III. STANDARD OF REVIEW

We use our independent judgment when reviewing whether a contract is void as a matter of public policy.[9] Questions relating to contract interpretation are questions of law, and we "adopt[] the rule of law most persuasive in light of precedent, reason, and policy."[10]

We review the decision of a motion for intervention as a matter of right using "our independent judgment if timeliness is not at issue and if the facts relevant to intervention are not disputed because then only questions of law are posed."[11] A court's grant of a motion for permissive intervention is reviewed for abuse of discretion.[12]

---

[8] The court amended its second order dissolving the consent decree two months later. But by that time, Crowley had already filed an appeal so the court had lost jurisdiction over the matter for purposes of amending the order. *See Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 783 (Alaska 2009) ("When [the appellant] filed her notice of appeal, the trial court lost jurisdiction over the matter."), *abrogated on other grounds by Shaffer v. Bellows*, 260 P.3d 1064 (Alaska 2011).

[9] *See Pavone v. Pavone*, 860 P.2d 1228, 1231-32 (Alaska 1993); *McKnight v. Rice, Hoppner, Brown & Brunner*, 678 P.2d 1330, 1334 (Alaska 1984).

[10] *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004) (citing *Vezey v. Green*, 35 P.3d 14, 20 (Alaska 2001)).

[11] *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000) (citing *McCormick v. Smith*, 793 P.2d 1042, 1044 n.3 (Alaska 1990)).

[12] *Tara R. v. State, Dep't of Fam. & Cmty. Servs., Off. of Child.'s Servs.*, 541 P.3d 530, 537 (Alaska 2024).

The superior court's procedural decisions, including the vacatur of its own order, are reviewed for abuse of discretion.[13] The court abuses its discretion when its decision is "arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive."[14]

## IV. DISCUSSION

We briefly clarify the issues properly before us. Here, we decide only whether the superior court erred in making substantive and procedural decisions in the consent decree case. While we granted Crowley's petition for review in the contract case, that petition only requested that we stay proceedings in the contract case. And we granted that request pending the outcome of this appeal.

As it relates to the consent decree case, both parties agree that the only non-procedural issue properly before us is whether the dissolution of the consent decree entered into by Crowley in itself voids the 2015 contract between Crowley and Delta Western. Additionally, Crowley challenges the following procedural points: the court's sua sponte decision to vacate its first order dissolving the consent decree; the court's invitation to Delta Western to engage in motion practice in the consent decree case prior to intervening in the matter; and the court's order permitting Delta Western to intervene. We first address Crowley's legal argument that its contract with Delta Western became void as a matter of law upon dissolution of the underlying consent decree, and then we address Crowley's procedural claims.

### A. The Dissolution Of The Consent Decree Did Not In Itself Void The Divestment Contract Required By That Decree.

Crowley contends that, as a matter of law, its lease agreement with Delta Western "must have terminated with the Consent Decree" requiring the agreement,

---

[13]     *See Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1119 (Alaska 2002).

[14]     *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009) (alteration in original) (quoting *Dobrova v. State, Dep't. of Revenue, Child Support Servs. Div.*, 171 P.3d 152, 156 (Alaska 2007)).

regardless of the terms of the lease.  But that premise is unsupported by precedent and deviates from the default principles of Alaska contract law.  We address each point in turn.

> **1. Interpretation of consent decrees in other contexts cuts against Crowley's theory that termination of a consent decree automatically voids contracts entered into pursuant to the decree.**

Crowley concedes that there is scant authority directly supporting its theory that if a consent decree requiring divestment contracts is dissolved, those contracts must terminate as a matter of law.  Crowley cites precedent it characterizes as indirectly supportive of its position.  But as we discuss below, this precedent does not address the principles Crowley suggests; indeed, insights from other jurisdictions regarding the relationship between consent decrees and related divestment contracts cut against Crowley's claim, and lead us to conclude that divestment contracts, as special purpose contracts executed pursuant to an antitrust consent decree, are not as a matter of law rendered void upon the dissolution of the consent decree.

Crowley looks to antitrust-related precedent in other jurisdictions, and in particular contends that the Ninth Circuit's decision in *United States v. FMC Corp.*[15] and the Pennsylvania Supreme Court's decision in *Commonwealth v. UPMC*[16] both lend support to the proposition that the terms of a consent decree supersede the contrary terms of a related or underlying contract.  But the Pennsylvania Supreme Court's decision in *UPMC* did not address, much less decide, whether a divestment contract is void as a matter of law if the consent decree for which it was executed is later dissolved.[17]  Rather, the question at issue in *UPMC* concerned the interpretation of a term contained in the consent decree, and whether a party was required to provide

---

[15]  531 F.3d 813 (9th Cir. 2008).

[16]  188 A.3d 1122 (Pa. 2018).

[17]  *Id.* at 1131-35.

services to a competitor beyond the time provided in the decree.[18]  And in *FMC Corp.* the Ninth Circuit addressed whether a third-party intervenor had standing to enforce an environmental remediation consent decree to which it was not a party.[19]  Neither case supports Crowley's contention that antitrust law renders its divestment contract with Delta Western void upon termination of the consent decree.  The other sources of authority that Crowley relies on similarly do not advance its position.

Consideration of federal antitrust consent decrees involving patents, for instance, contradicts Crowley's position.  Both the Federal Trade Commission (FTC) and United States Department of Justice (DOJ) have entered consent decrees requiring manufacturers acquiring other companies to grant licenses to intellectual property for periods longer than the decree.

In 2004, the FTC entered into a consent into decree with two drug manufacturers that allowed their merger, and, in addition to requiring asset divestments of tangible and intangible property, required the merging entity to grant perpetual licenses for use of its patents to the buyer of divested assets.[20]  The decree stated that the licenses were "irrevocable, perpetual, fully paid-up and royalty-free" and gave the divested asset buyer the right to both manufacture, and later distribute, the divested pharmaceutical product.[21]  However, unlike Crowley's consent decree in which the duration of the consent decree — unless terminated earlier for good cause — and the required fuel storage lease were the same, the FTC's consent decree would terminate after 20 years.[22]

---

[18]  *Id.*

[19]  531 F.3d at 819-24.

[20]  *In re Cephalon, Inc.*, 138 F.T.C. 538, 583-604 (2004).

[21]  *Id.*

[22]  *Id.* at 628.

Under Crowley's theory that the termination of a consent decree must result in the termination of contracts effectuating the terms of the consent decree, the FTC order would have been internally inconsistent. An irrevocable license "cannot be terminated for *any reason*."[23] Requiring the license to terminate upon dissolution of the consent decree would contradict the term in the decree making the divested licenses irrevocable. Similarly, something that is "perpetual" would "contin[ue] forever" or be "valid for all time"[24] — not just for 20 years. Interpreting the consent decree in accord with Crowley's theory — that the "perpetual, irrevocable" license must end after 20 years when the consent decree terminates — would ignore the terms of the decree. While no court has interpreted the FTC's consent decree, the most natural reading of it would be to understand that the licensing agreement would not end upon dissolution of the consent decree.[25]

Perpetual licenses that last beyond the duration of a consent decree have also been used in judicial consent decrees obtained by the DOJ. In *United States v. Ecolab, Inc.*, a chemical supplier to deep water drilling operations agreed to divest "[e]xclusive, perpetual, paid-up, non-transferable licenses" for certain intellectual property related to the supplier's products used in the Gulf of Mexico.[26] And the duration of the consent judgment was only 10 years, the default length for a DOJ

---

[23] *Irrevocable license*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).

[24] *Perpetual*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998) (emphasis added).

[25] *Cf. Mahan v. Mahan*, 347 P.3d 91, 95 (Alaska 2015) (stating that the "preferred method of interpreting contracts is to reconcile conflicting terms in a way that gives effect to them all." (quoting *Hussein-Scott v. Scott*, 298 P.3d 179, 182 (Alaska 2013))).

[26] No. 1:13-cv-444, 2013 U.S. Dist. LEXIS 147824, at *4 (D.D.C. Sep. 18, 2013).

consent decree.[27] Again, the plain language of an express, perpetual license would conflict with the supposition that the license would expire with the termination of the consent decree. Adopting Crowley's theory there would lead to a dubious interpretation of the license's duration, and it would undermine the purpose of the consent decree.

The idea behind allowing for a perpetual license that survives the consent decree is the promotion of market competition. In *Ecolab*, the DOJ required the defendant to grant a patent license to a competitor rather than requiring a patent sale in order to align the scope of the divestment remedy with the geographic market impacted by the proposed merger.[28] The DOJ cited its *Antitrust Division Policy Guide to Merger Remedies* as the basis for its decision, which states:

> When a patent covers the right to compete in multiple product or geographic markets, yet the merger adversely affects competition in only a subset of these markets, the Division will insist on the sale or license of rights necessary to effectively preserve competition in the affected markets. In some cases, this may require that the purchaser or licensee obtain the rights to produce and sell only the relevant product.[29]

Though patents and leaseholds of real property involve different legal concepts, both Crowley's consent decree and the federal agencies described above used long-term contracts instead of asset sales to achieve market competition after an approved merger. These examples cut against Crowley's theory that the termination of a consent decree must result in termination of contracts anticipated by the decree.

---

[27] *Id.* at *31.

[28] 78 Fed. Reg. 23291, 23297 (Apr. 18, 2013).

[29] *Id.* at n.4 (quoting U.S. DEP'T OF JUST., ANTITRUST DIV., ANTITRUST DIVISION POLICY GUIDE TO MERGER REMEDIES 11 n. 23 (2011)).

### 2. Concerns for competitor independence and basic principles of contract law support our conclusion that dissolution of a consent decree does not automatically void a divestment contract.

In addition to the informative authorities discussed above, we note that Crowley's position carries with it problematic policy implications. A default rule that termination of a consent decree also terminates any divestment contract entered into pursuant to the consent decree would undercut competitor independence and allow for circumvention of basic contract principles.

First, we observe that where federal regulators have challenged mergers instead of seeking consent decrees, courts have looked to competitor independence as an important factor in their analysis of such challenges. In *Federal Trade Commission v. RAG-Stiftung*, for instance, when the FTC sought a preliminary injunction to prevent a merger, the merging company announced a divestiture to rebut the FTC's prima facie claim that the merger would cause a highly concentrated market.[30] When considering whether the merging company met its burden to rebut the prima facie case of market concentration, the United States District Court for the District of Columbia evaluated whether the divestiture would "replace the merging firm's competitive intensity."[31] It considered "the likelihood of the divestiture; the experience of the divestiture buyer; the scope of the divestiture[;] the *independence of the divestiture buyer from the merging seller*[;] and the purchase price."[32] In another antitrust action for a preliminary injunction, this time by the DOJ, the court applied the same test.[33]

---

[30] 436 F. Supp. 3d 278, 303-04 (D.D.C. 2020).

[31] *Id.* at 304 (citing *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 60 (D.D.C. 2017)).

[32] *Id.* (emphasis added) (citing *Aetna Inc.*, 240 F. Supp. 3d at 60-74).

[33] *United States v. UnitedHealth Grp. Inc.*, 630 F. Supp. 3d 118, 135 (D.D.C. 2022) (quoting *RAG-Stiftung*, 436 F. Supp. 3d at 278, 304).

While these cases do not involve consent decrees, each demonstrates that in antitrust matters, parties to a divestment contract must be independent actors.[34] Indeed, when determining whether to approve Crowley's consent decree, the superior court considered the independence of Delta Western to be an important factor in making its decision. Allowing Crowley to avoid its contractual obligations simply by seeking a dissolution of the consent decree would undermine Delta Western's independence and render its ability to compete in the Western Alaska fuel distribution market dependent on the status of a consent decree to which it is not a party.

Of course, parties can contract around default principles of law — and here, Crowley and the State were free to negotiate terms of the consent decree, and Crowley and Delta Western were free to negotiate terms of the divestment contract, providing or anticipating that the termination of the consent decree would terminate the divestment contract.[35] Crowley argues that the consent decree here is ambiguous as to this issue, and that whether the involved parties intended this result is a question that should be answered through discovery. It maintains that the superior court's decision in the contract case denying its Alaska Civil Rule 56(f) request in that matter amounted

---

[34]     *See In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 269-70 (6th Cir. 2014) (considering appeal over alleged anticompetitive conspiracy between merging company and divested asset buyer).

[35]     To the extent Crowley and the State anticipated such terms in the consent decree, and Delta Western was unaware of that and did not negotiate or anticipate similar terms with Crowley in the divestment contract, such terms would likely not be enforceable against Delta Western's interest in the divestment contract. This is because a term that would release Crowley from its contractual obligations to Delta Western before the contract's expiration must have been agreed to by *both* parties to be enforceable. *See* RESTATEMENT (SECOND) OF CONTS. § 230 (A.L.I. 1981) (providing "if under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs"). *Id.* § 17 (providing "a contract requires a bargain in which there is a manifestation of *mutual assent* to the exchange" (emphasis added)).

to error that impacted the consent decree case, and it urges that the consent decree case is the "proper forum" for determining Crowley and the State's intent. Crowley therefore argues that if we decline to hold that the termination of a consent decree *automatically* terminates the divestment contract as a matter of law, then we should vacate the superior court's order in the consent decree case and remand that case for discovery regarding whether Crowley and the State intended the Crowley-Delta Western divestment contract to terminate with the consent decree.

We decline Crowley's invitation to remand the consent decree case for further discovery. To be clear, we do not hold or otherwise conclude that discovery regarding the parties' intent should not be permitted in the contract case, where the litigation over the reasonable expectations of Crowley and Delta Western may be informed by discovery regarding all involved parties' intent entering into the consent decree and divestment contract respectively, and regarding Delta Western's awareness of Crowley's and the State's intent entering into the consent decree.[36] Crowley requested the opportunity to conduct further discovery regarding the intent of the parties in the contract case, and the superior court denied that request. Whether that denial was an abuse of discretion remains a question in the contract case that is not yet before us.

In sum we hold that the dissolution of a consent decree does not automatically terminate a divestment contract entered into pursuant to the decree as a matter of law. And whether the State and Crowley intended the termination of their consent decree to terminate all related divestment contracts, and whether Delta Western was aware of such intent or intended similarly with respect to its contract with Crowley, are questions to be decided in the contract case.

---

[36]     Indeed, the superior court seemed to anticipate such litigation when it indicated in its final order dissolving the consent decree that "any contracts entered into by Crowley as questioned by the Consent Decree are outside the scope of this termination order" and that Crowley could pursue relief from obligations imposed by the divestment contract in "a separate action."

**B. The Court Did Not Abuse Its Discretion In Vacating Its Initial Order Dissolving The Consent Decree.**

Crowley argues that the superior court abused its discretion when it sua sponte vacated its initial order dissolving the consent decree. Crowley contends that Delta Western was not entitled to notice of its motion to dissolve the consent decree in that matter and that the court therefore should not have revisited its initial order to consider Delta Western's position. We are not persuaded.

We initially observe that Crowley's position is counter to our precedent. In *Gallagher v. Gallagher* we held that a court's sua sponte vacatur of its previous order six months following the first order was not an abuse of discretion because the court had erred in issuing its initial order.[37] We held that such inherent authority of the court exists under Alaska Civil Rule 60(b).[38] Nothing in our holding in *Gallagher* suggests that the court's reasoning in this case was somehow improper, particularly where it became clear to the court that Crowley sought to void its contract with Delta Western through the court's initial dissolution order, a result the court had not contemplated. Here, the court was informed by the conduct of the parties and the tenor of the proceedings, albeit in the context of a parallel proceeding. And though Crowley asserts that the court's vacatur of its prior order was prejudicial, it failed to articulate any prejudice in its opening brief on appeal.[39]

Finally, to the extent there was arguably any error in the court's revisiting of its prior order, such error was harmless. That is, after the court sua sponte revisited

---

[37]     866 P.2d 123, 124 (Alaska 1994).

[38]     *Id.* (citing *Martin v. Leonard Motor-El Paso*, 402 P.2d 954, 956 (N.M. 1965)).

[39]     In its reply brief Crowley does assert "unnecessary delay" arising from the time it took for the court to eventually dissolve the consent decree again. But we deem waived "arguments raised for the first time in a reply brief." *See Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010).

its initial order, it issued a second order that had the same effect as the first order — dissolving the consent decree.

**C.**    **The Court Did Not Abuse Its Discretion In Allowing Delta Western To Participate In The Consent Decree Litigation.**

Given the context of this proceeding, the court did not abuse its discretion either in allowing Delta Western to lodge its position on Crowley's Rule 60(b) motion prior to being joined as a party or in allowing Delta Western to intervene.

As a preliminary matter, Crowley's claim that the court erred in allowing Delta Western to intervene in the consent decree case is a different argument from whether, if joined, Delta Western could seek to enforce the terms of the consent decree or oppose its dissolution. As clearly stated in Delta Western's response to Crowley's Rule 60(b) motion, Delta Western ultimately took no position on dissolution of the consent decree. Regardless, and as discussed below, the court did not err or abuse its discretion when it allowed Delta Western to lodge its position on Crowley's Rule 60(b) motion and later intervene.

First, the court acted within its discretion in inviting Delta Western to respond to Crowley's Rule 60(b) motion to dissolve the consent decree. The court has discretion to provide for the orderly progress of litigation.[40] Indeed, we have previously encouraged briefing by non-parties under certain circumstances in order to avoid intervention.[41] And this is not a circumstance in which a non-party was asking the court

---

[40]    *See Steward v. State*, 322 P.3d 860, 863 (Alaska 2014) (reviewing decisions to exclude witnesses for abuse of discretion); *Douglas v. State*, 214 P.3d 312, 319 (Alaska 2009) (reviewing decision to remove or restrain a disruptive criminal defendant for abuse of discretion).

[41]    *Cf. Alaskans for a Common Language v. Kritz*, 3 P.3d 906, 916 (Alaska 2000) (quoting *State v. Weidner*, 684 P.2d 103, 114 (Alaska 1984)).

to consider issues not raised by the parties.[42] Delta Western expressly sought to address the scope of the court's order dissolving the consent decree — dissolution being the central reason for Crowley's motion.

Moreover, the court did not abuse its discretion when it permitted Delta Western to intervene in the consent decree case for the purpose of addressing the scope or impact of the court's dissolution order. We note that the court did not specify whether it was granting intervention as a matter of right or on a permissive basis. We clarify here that although Delta Western could not intervene as of right in the consent decree case, permissive intervention was within the court's discretion.[43]

Delta Western could not intervene in the consent decree case as of right pursuant to Alaska Civil Rule 24(a). In *State v. Weidner*, we articulated a four-part test to determine whether a court must grant a motion to intervene as of right:

> (1) the motion must be timely; (2) the applicant must show an interest in the subject matter of the action; (3) it must be shown that this interest may be impaired as a consequence of the action; and (4) it must be shown that the interest is not adequately represented by an existing party.[44]

---

[42] *Cf. State, Dep't of Transp. & Pub. Facilities v. Fairbanks N. Star Borough*, 936 P.2d 1259, 1262 n.4 (Alaska 1997) (quoting *Hootch v. Alaska State-Operated Sch. Sys.*, 536 P.2d 793, 809 n.26 (Alaska 1975)); *see also State v. Alaska Civ. Liberties Union*, 159 P.3d 513, 514 (Alaska 2006). *But see Kohlhaas v. State*, 518 P.3d 1095, 1107-10 (Alaska 2022) (allowing amici to argue on behalf of parties).

[43] Because we conclude the court was within its discretion to permit Delta Western to intervene pursuant to Alaska Rule 24(b), we do not address Crowley's argument the court could not join a party sua sponte pursuant to Alaska Rule 19, which requires joinder of persons needed for a just adjudication. We previously observed that the court "may convert a non-party's Alaska Rule 19 joinder motion into a Alaska Rule 24 motion to intervene," but Delta Western moved to intervene under Rule 24. *See Martinez v. Gov't Emps. Ins. Co.*, 473 P.3d 316, 326 n.32 (Alaska 2020) (citing *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995)).

[44] *State v. Weidner*, 684 P.2d at 113 (citing *Foster v. Gueory*, 655 F.2d 1319, 1324-25 (D.C. Cir. 1981)).

Without addressing the other criteria, we observe that Delta Western did not have the requisite interest in the subject matter of the consent decree action necessary to intervene as of right. At its heart, the consent decree case regarded the attorney general's exercise of law enforcement authority in regulating competition within a particular market.[45] In *Neese v. State*, we held that individuals who had opted out of a consent judgment pursuant to the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA)[46] could not join the litigation as parties as of right under Alaska Civil Rule 24(a).[47] The UTPA regulates competition and consumer protection much like the ARTA.[48] Both acts empower the attorney general to "bring an action in the name of the state against the person to restrain by injunction the use of the act or practice."[49] In *Neese* we observed that "there is an enhanced intervention standard in cases involving a government's sovereign power: 'Generally when the government exercises its sovereign power to enforce and defend duly enacted laws, no other entity can have an interest sufficient to satisfy Alaska Civil Rule 24(a).' "[50] We explained that even potential parties that "have claims identical to those settled by the consent decree" could "not possess adequate interest to satisfy" the requisite interest factor "if the attorney general 'exercise[d] its sovereign power to enforce and defend duly enacted [consumer protection] laws.' "[51] We held that intervention as of right was not permitted because the attorney general had exercised its sovereign power in conducting its

---

[45] *See id.*

[46] AS 45.50.471-.561.

[47] 218 P.3d 983, 990 (Alaska 2009).

[48] AS 45.50.562-.598.

[49] AS 45.50.501(a). The ARTA allows the attorney general to "bring an action to enjoin a violation of AS 45.50.562-45.50.596." AS 45.50.580(a).

[50] *Neese*, 218 P.3d at 988 (quoting *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000)).

[51] *Id.* (alterations in original) (quoting *Kritz*, 3 P.3d at 912 ).

investigation under the UTPA and "reaching a settlement agreement" and that doing so resulted in the consumers having no "interest sufficient to satisfy Civil Rule 24(a)."[52] In reaching our holding we looked to federal cases, including antitrust cases.[53]

In *Alaskans for a Common Language v. Kritz*, we held that intervention as a matter of right is available in litigation initiated by a government entity if the intervenor's interest is not adequately represented.[54] Delta Western argues that intervention as of right is available because its interests were not adequately represented by the government.

But Delta Western's argument focuses only on the adequate representation element of the four-part test. In *Kritz*, this element did not turn on the conduct of the governmental entity in enforcing the intervenor-applicant's interest, but on the specific nature of the protected interest.[55] However, in the consumer protection arena, and as stated above, third parties have "no adequate interest[]" to protect where "the attorney general 'exercise[d] its sovereign power to enforce and defend duly enacted [consumer protection] laws.' "[56] We see no reason to distinguish between the UTPA and the ARTA in barring intervention as of right in a proceeding brought by the

---

[52]     *Id.*

[53]     *Id.* at 989 (citing *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363 (D.D.C. 2001); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26 (D.C. Cir. 2000)).

[54]     *Kritz*, 3 P.3d at 913.

[55]     *See id.* at 912.

[56]     *Neese*, 218 P.3d at 988 (alterations in original) (quoting *Kritz*, 3 P.3d at 912).

attorney general. Therefore, Delta Western could not intervene as a matter of right in the consent decree case.[57]

But even though Delta Western could not intervene as a matter of right pursuant to Alaska Civil Rule 24(a), it was within the superior court's discretion to permit Delta Western's intervention pursuant to Alaska Civil Rule 24(b). Alaska Rule 24(b) provides that the court may permit a party to intervene where the intervenor's "claim or defense and the main action have a question of law or fact in common." In exercising its discretion, the superior court should consider "whether intervention would impair the rights of the original parties by causing undue delay or prejudice."[58]

Here, Delta Western's claim in the contract case is related to the scope of the court's order in the consent decree case. And Crowley does not articulate in its opening brief how it was or would be prejudiced by Delta Western's intervention.[59] Further, there is an important question of law in the contract case that is related to the question here, namely, whether the vacatur of the consent decree automatically voids Crowley's contract with Delta Western. Therefore, while Delta Western was not entitled to intervention as a matter of right under Alaska Civil Rule 24(a), we cannot say that the court abused its discretion by permitting Delta Western to intervene under Alaska Civil Rule 24(b).

---

[57] Because we conclude Delta Western does not satisfy a necessary element to intervene pursuant to Alaska Civil Rule 24(a), we do not reach whether it satisfied the other elements required under the rule.

[58] *Kritz*, 3 P.3d at 916; *see also Neese*, 218 P.3d at 992 (reiterating that "additional parties are, . . . the source of additional questions, briefs, objections, arguments and motions; [and] where no new issues are presented, the most effective and expeditious way to participate is by a brief amicus curiae and not by intervention." (quoting *Keane v. Loc. Boundary Comm'n*, 893 P.2d 1239, 1250 (Alaska 1995))).

[59] *See supra*, note 43.

## V. CONCLUSION

We hold that the dissolution of an antitrust consent decree does not automatically void divestment contracts executed pursuant to the consent decree. We further conclude that the superior court did not abuse its discretion or commit reversable error by vacating its initial order dissolving the consent decree, by inviting Delta Western to lodge its position on Crowley's Rule 60(b) motion, or by granting Delta Western's motion to intervene in the consent decree litigation. We therefore AFFIRM the superior court as to the matters before us in the consent decree case, and LIFT our stay of the contract case.